John Dee GILL, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 10–00–005–CR.

Court of Appeals of Texas, Waco.

Aug. 29, 2001.

J. Dwight Carmichael, McGregor, McGregor & Carmichael, Hillsboro, for appellant.

Dan V. Dent, Hill County District Attorney, Hillsboro, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

DAVIS, Chief Justice.

A jury convicted John Dee Gill, Jr. of unlawful possession of a firearm by a felon. The court assessed his punishment at four years' imprisonment. Gill claims in six points that: (1) the evidence is legally and factually insufficient to prove that he possessed a handgun (two points); (2) the court abused its discretion by admitting a bag and a handgun in evidence without a proper chain of custody (two points); (3) the evidence is legally insufficient to prove that he is the same person shown by the evidence to have been previously convicted of a felony; and (4) the evidence is legally insufficient to prove that he possessed a firearm within five years after his release from confinement.

## BACKGROUND

The indictment alleges that Gill possessed a firearm on or about February 9, 1999 and within five years of his release from confinement following a 1994 felony conviction.

Department of Public Safety Trooper Doug Childs testified that he was parked on the side of Interstate Highway 35W on the night of February 9 "[r]unning stationary radar." The radar indicated that Gill's car was traveling between ten and fifteen miles per hour above the posted speed

limit.[1] According to Childs, the brake lights on Gill's car came on as the trooper pulled onto the highway with his overhead lights engaged. Gill slowed down considerably, and Childs soon caught up to him. Gill activated his turn signal and moved over to the shoulder as if he would stop. He then pulled back onto the highway. About two miles down the road, Childs observed Gill throw "a bag or dark object out." He "saw it hit on the pavement." Childs made a mental note that Gill threw this object from his car just before they reached an overpass where an unidentified county road crosses the interstate.

Apparently, Gill's turn signal remained activated during this entire episode. Gill eventually took an exit and pulled into a convenience store parking lot about five miles from the location where Childs first observed him. The trooper remained at the scene for "a minute or so" until a Hillsboro police officer placed Gill in custody. He asked the officer to remain there until he could backtrack and locate the item Gill had thrown from his car.

Childs arrived in the area by the county road overpass about fifteen minutes after he saw Gill throw the object from his car. He located a black bag in the middle of the lefthand lane of the interstate and a handgun approximately three feet to the left of the bag.[2] Childs recalled that traffic was "very light that night." It did not appear to him that these objects had been run over by another vehicle.

Childs placed these items in the front floorboard of his patrol car and returned to the convenience store. He inventoried Gill's car and released it to a wrecker service. He then took custody of Gill and transported him to the county jail.

The State introduced a black bag marked as State's Exhibit No. 1 and a handgun marked as State's Exhibit No. 2. Childs testified that these items were the same ones he retrieved from the interstate on the night in question. He stated that the bag was the one he had found despite the absence of any identifying marks. He identified the handgun by its brand name and by the property inventory card which he completed on the night of Gill's arrest.

On examination by Gill's counsel, Childs testified that he knew this was the same bag because he had kept the bag and handgun together and he had attached the property inventory card to the handgun. He testified that he completed the inventory card that night and placed the bag, the handgun, and the card in a filing cabinet in his office. He handed these items over to the property officer the next day for safekeeping. The property officer placed the items in a locked cabinet.

Before trial, Childs and the property officer removed the items from the cabinet. Childs testified that they did not appear to have been altered or tampered with in any manner.

The State called a fingerprint expert to establish that Gill is a convicted felon. This witness testified that the fingerprints in a penitentiary packet offered in evidence by the State as State's Exhibit No. 4 are Gill's. The penitentiary packet reflects that Gill was placed on felony probation for possession of a controlled substance in April 1992. The court revoked

---

1. Trooper Childs testified that he could not recall the exact speed indicated on the radar without reviewing his report, but he believed it to be "78 or 81 miles an hour." The posted speed limit for that section of Interstate 35 was 65 miles per hour.

2. Childs also located a baggie of marihuana. Before he testified about the contents of this second bag in front of the jury however, the State agreed not to elicit any testimony about the marihuana in response to Gill's relevance and Rule 403 objections.

his probation in November 1994 and sentenced him to seven years' confinement.

## POSSESSION OF FIREARM

Gill contends in his first and second points respectively that the evidence is legally and factually insufficient to prove that he possessed a firearm on the date in question. More specifically, he contends that the State failed to offer sufficient evidence to affirmatively link him to the handgun Childs found on the interstate.

■■■ In reviewing a claim of legal insufficiency, we view the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *See Lacour v. State,* 8 S.W.3d 670, 671 (Tex.Crim.App. 2000) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)). We resolve any inconsistencies in the evidence in favor of the verdict. *See Curry v. State,* 30 S.W.3d 394, 406 (Tex.Crim.App.2000).

■■■ In cases involving the possession of an unlawful object or substance, the State must prove that the accused knowingly possessed the contraband in question. *See Brown v. State,* 911 S.W.2d 744, 747 (Tex.Crim.App.1995); *Harris v. State,* 994 S.W.2d 927, 933 (Tex.App.—Waco 1999, pet. ref'd). The State accomplishes this task with "affirmative links" which demonstrate that he was "conscious of his connection with it and [knew] what it was." *Id.* Affirmative links tend to establish "that the accused's connection with the contraband was more than just 'fortuitous.'" *Harris,* 994 S.W.2d at 933 (quoting *Brown,* 911 S.W.2d at 747).

Courts most frequently employ the affirmative links concept in controlled substance cases. *See, e.g., id.* Nevertheless, the State must likewise affirmatively link the accused to a weapon which he is alleged to have unlawfully possessed. *See Corpus v. State,* 30 S.W.3d 35, 37–38 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd); *Ramirez v. State,* 897 S.W.2d 428, 436 (Tex.App.—El Paso 1995, no pet.); *Lisai v. State,* 875 S.W.2d 35, 37 (Tex.App.— Texarkana 1994, pet. ref'd); *Young v. State,* 752 S.W.2d 137, 140 (Tex.App.-Dallas 1988, pet. ref'd).

Some courts have suggested that the presence of affirmative links is more important when the accused did not have exclusive control over the place where the weapon was found. *See Cude v. State,* 716 S.W.2d 46, 47 (Tex.Crim.App.1986); *Corpus,* 30 S.W.3d at 38; *Chisum v. State,* 988 S.W.2d 244, 247 (Tex.App.—Texarkana 1998, pet. ref'd); *Sandoval v. State,* 946 S.W.2d 472, 476 (Tex.App.—Corpus Christi 1997, pet. ref'd); *Ramirez,* 897 S.W.2d at 436. However, the Court of Criminal Appeals has apparently rejected this distinction. In *Brown,* the Court summarized the "affirmative links" rule as follows:

> Because, under our law, an accused must not only have exercised actual care, control, or custody of the substance, but must also have been conscious of his connection with it and have known what it was, evidence which affirmatively links him to it suffices for proof that he possessed it knowingly. Under our precedents, it does not really matter whether this evidence is direct or circumstantial. In either case it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called "affirmative links" rule.

*Brown,* 911 S.W.2d at 747.

■■■ In our view then, the State must prove sufficient "affirmative links" in every possession case, but the links which must

be proved will vary depending on the nature of the accused's possession of the contraband. For example, if a handgun is found in the pants pocket of a suspect, then sufficient affirmative links may be shown by the mere presence of the weapon on the suspect's person. Conversely, if the handgun is found in a room occupied by the suspect and others, then the State will have to show "additional independent facts and circumstances which affirmatively link the accused to the contraband." *Cude*, 716 S.W.2d at 47; *Chisum*, 988 S.W.2d at 247; *Ramirez*, 897 S.W.2d at 436.

■ Among the factors deemed pertinent to the affirmative links analysis in a controlled substance case are the following:

- whether the defendant had sole access to the vehicle;
- whether he made furtive gestures toward the contraband;
- whether he had access to the contraband in question; and
- whether he tried to escape.

*See Harris*, 994 S.W.2d at 933. We adapt these factors to Gill's circumstances.

■ Trooper Childs testified that he saw Gill throw a black object from his car near the county road overpass. He saw it land on the pavement. Childs returned to that spot about fifteen minutes later and found a bag and a handgun on the highway. No other evidence was presented that affects our determination of this issue. In light of this evidence together with the fact that Gill was alone in the car and refused to pull over, we conclude that the State proved sufficient affirmative links to show that Gill knowingly possessed the firearm. *Cf. Williams v. State*, 834 S.W.2d 502, 505–06 (Tex.App.—Fort Worth 1992, pet. ref'd) (evidence sufficient to prove defendant possessed handgun found in area

where officer observed him "throw something that resembled a gun").

Accordingly, the evidence is legally and factually sufficient to prove that Gill knowingly possessed a firearm on the date in question. We overrule Gill's first and second points.

## PRIOR CONVICTION

Gill argues in his fifth point that the evidence is legally insufficient to prove that he is the same person who was convicted of the felony offense alleged in the indictment. He claims in his sixth point that the evidence is legally insufficient to prove that he possessed a firearm within five years after being released from prison.

The court reporter affixed an exhibit identification sticker to the certification page of the penitentiary packet. Gill suggests that "[t]here is nothing in the record which links the remaining pages of the alleged exhibit...." We disagree. The exhibit is stapled, and the TDCJ record clerk certified that the documents attached to the certificate are true and correct copies of Gill's records with reference to trial court cause number "91207C." The penitentiary packet contains photographs and a full set of fingerprints. It also contains a judgment reflecting that John Dee Gill, Jr.'s felony probation was revoked in cause number 91–207–C, in the 54th District Court of McLennan County, on November 17, 1994. The court reduced Gill's sentence from ten years' confinement to seven years and imposed sentence on the same date.

■ The TDCJ record clerk's attestation sufficiently authenticates the documents contained in the penitentiary packet. *See Reed v. State*, 811 S.W.2d 582, 587 (Tex.Crim.App.1991); *Barker v. State*, 931 S.W.2d 344, 348–49 (Tex.App.—Fort

Worth 1996, pet. ref'd); *Manning v. State,* 864 S.W.2d 198, 204 (Tex.App.—Waco 1993, pet. ref'd). Nonetheless, the State must prove that the defendant is the same person named in the penitentiary packet. *See Beck v. State,* 719 S.W.2d 205, 210 (Tex.Crim.App.1986); *Smith v. State,* 998 S.W.2d 683, 687 (Tex.App.—Corpus Christi 1999, pet. ref'd); *Williams v. State,* 946 S.W.2d 886, 895 (Tex.App.—Waco 1997, no pet.).

 The State frequently establishes this connection with evidence that the fingerprints in the penitentiary packet are those of the person on trial. *See Beck,* 719 S.W.2d at 210; *Littles v. State,* 726 S.W.2d 26, 28 (Tex.Crim.App.1984); *Frazier v. State,* 15 S.W.3d 263, 267 (Tex.App.—Waco 2000, no pet.); *Smith,* 998 S.W.2d at 687. The State may also prove this connection with photographs included in the penitentiary packet. *See Littles,* 726 S.W.2d at 32 (op. on reh'g); *Daniel v. State,* 585 S.W.2d 688, 691 (Tex.Crim.App. [Panel Op.] 1979); *Smith,* 998 S.W.2d at 687; *Williams,* 946 S.W.2d at 895.

 In Gill's case, the State's fingerprint expert testified that the fingerprints in the penitentiary packet are Gill's. The packet also contains Gill's photographs. Accordingly, we conclude that the evidence is legally sufficient to prove that Gill is the same person who was previously convicted as alleged.

 To obtain a conviction under section 46.04(a)(1) of the Penal Code, the State must prove that the defendant possessed a firearm "after conviction and before the fifth anniversary of the person's release from confinement...." Tex. Pen. Code Ann. § 46.04(a)(1) (Vernon 1994). The penitentiary packet reflects that TDCJ received Gill into custody on April 13, 1995. Trooper Childs testified that he saw Gill throw the handgun from his car on February 9, 1999, less than five years after he went to prison.

Because Gill committed the instant offense less than five years after he went to prison, he necessarily committed it within five years after he was released from prison. Although it would have been helpful for the State to prove the date on which Gill was released on parole, such proof is unnecessary under the facts of this case. Accordingly, we conclude that the evidence is legally sufficient to prove that Gill possessed a firearm within five years after his release from prison.

For these reasons, we overrule Gill's fifth and sixth points.

## CHAIN OF CUSTODY

Gill avers in his third and fourth points respectively that the court abused its discretion in admitting the bag and the handgun in evidence because the State failed to establish a proper chain of custody for these items.

 The State must establish a chain of custody to authenticate an exhibit:

when there [is] a possibility of commingling the item with items similar in appearance, when items not having distinctive characteristics [have] not been marked with distinctive markings by the sponsoring witness, and when necessary to refute a suggestion that the evidence [has] been tampered with or changed in some manner.

*Ballard v. State,* 23 S.W.3d 178, 183 (Tex. App.—Waco 2000, no pet.) (quoting *Moore v. State,* 821 S.W.2d 429, 431 (Tex.App.—Waco 1991, no pet.)).

 Childs testified that he took possession of the bag and the handgun and placed them in the front floorboard of his patrol car. After inventorying Gill's vehicle and taking him to the county jail, Childs took the items to his office. He

filled out a property inventory card and attached it to the handgun. He put the bag and handgun in his filing cabinet. The next day he delivered these items to the property officer who placed them in a locked cabinet. Childs saw the property officer put the items in this cabinet and saw him remove them shortly before trial. Childs testified that these items did not appear to have been altered or tampered with in any manner.

From this testimony, we conclude that the State established a sufficient chain of custody. *See Ballard,* 23 S.W.3d at 183; *Moore,* 821 S.W.2d at 431. Accordingly, we overrule Gill's third and fourth points.

We affirm the judgment.