**Johnny Earl SMITH, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–02–00143–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted June 19, 2003.

Decided Sept. 17, 2003.

Toby C. Wilkinson, Law Office of Toby C. Wilkinson, Greenville, for appellant.

Steve Tittle, Hunt County Asst. Dist. Atty., F. Duncan Thomas, Hunt County Dist. Atty., Greenville for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Chief Justice MORRISS.

A high-speed chase through the streets of Greenville by a Hunt County deputy sheriff resulted in the deputy's recovery of a sawed-off shotgun from the floor of the truck driven and solely occupied by Johnny Earl Smith, a felon. In cause number 20,991 in the 196th Judicial District Court of Hunt County, a jury found Smith guilty of unlawful possession of a firearm by a felon.[1] Punishment, enhanced by two or more prior felony convictions, was assessed at thirty years' imprisonment.[2] On appeal, Smith contends the evidence was legally and factually insufficient to support his conviction. We affirm.

**Facts**

The record reflects the following events. On January 7, 2002, Smith visited an automobile dealership in the town of Quinlan. James Joseph, manager of the dealership, recognized Smith as someone with whom the business had previously dealt and allowed Smith to test drive a 1994 Ford extended cab pickup truck. Joseph informed Smith he was allowed to drive the truck three miles in any direction from the dealership. After some time, concerned that Smith had not returned from the test drive, Joseph contacted the sheriff's office and was advised by the dispatcher to wait longer for Smith to return. Two days later, the Quinlan police chief went to the dealership and, after being informed of Smith's failure to return the vehicle, contacted the sheriff's department. The sheriff's department sent Deputy Henry Thomas Grandfield to the dealership, where he took the report of the missing vehicle.

About four hours after taking this report, Grandfield was in Greenville, about twenty-five miles away from Quinlan. There, Grandfield observed what he believed to be the truck Joseph reported as stolen. When Grandfield began following this vehicle, the driver accelerated and began passing quickly through the fairly heavy traffic. Grandfield turned on his vehicle's siren and emergency lights and pursued the truck. Grandfield testified that, at times, speeds during the three-mile chase reached seventy to eighty miles per hour through town and that the driver of the pickup truck disregarded traffic signs and signals throughout the pursuit. Finally, the truck was driven through a grassy field and onto a parking lot, where the driver attempted to pass between two parked cars but failed, crashing and coming to rest on the hood of one. Grandfield then arrested the driver, who identified himself as Johnny Earl Smith.

Grandfield made arrangements to have the truck impounded and inventoried. James Frazier, an employee of a vehicle towing service, arrived to assist Grandfield. Because the front portion of the

---

1. Tex. Pen. Code Ann. § 46.04(a) (Vernon 2003).

2. Smith successfully moved to try jointly cause numbers 20,991 (unlawful possession of a firearm by a felon), 20,992 (evading arrest or detention), and 20,993 (unauthorized use of a motor vehicle). The jury, having found Smith guilty in all three cases and having found the enhancement paragraphs true, assessed punishment at thirty, ten, and five years, respectively. His sentences will run concurrently.

truck was now positioned on the hood of another car, Frazier first removed the car from beneath the truck. Then Frazier entered the truck to prepare it for towing and stepped on a hard, cloth-covered object on the floorboard. There is some dispute as to whether Grandfield or Frazier removed the object from the floorboard. Grandfield testified that Frazier brought him the object; Frazier testified that he simply alerted the deputy, who then came and removed the object. Grandfield unwrapped the object and found it was a sawed-off shotgun.

Smith presented testimony from his sister and a fellow inmate in an attempt to show he was the victim of a conspiracy of dishonest law enforcement officials. Smith claimed he had been an informant in the past and, by virtue of this involvement with law enforcement, had considerable information concerning these officials who were conspiring to "get him." He testified at the punishment phase of trial that, because of his knowledge, his life had been threatened and he fled from Grandfield because he was afraid. Smith requested the trial court to instruct the jury on the issues of duress and necessity. The trial court rejected these requested instructions.[3] Smith's conviction and this appeal followed.

**Analysis**

 When an appellant challenges both legal and factual sufficiency of the evidence, the reviewing court will determine first whether the evidence was legally sufficient to support the verdict. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim. App.1996). We evaluate all evidence, admissible or inadmissible, which the jury was permitted to consider. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex.Crim.App.

1993); *Ennis v. State*, 71 S.W.3d 804, 810 (Tex.App.-Texarkana 2002, no pet.). In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found each essential element of the offense charged beyond a reasonable doubt. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim. App.2000). We resolve inconsistencies in testimony in favor of the verdict. *Id.*

 When reviewing the factual sufficiency of the evidence to support conviction, we determine whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary evidence. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). We review the evidence weighed by the jury that tends to prove the elemental fact at issue and compare it with the evidence that tends to disprove that fact. *Id.* While we review the jury's weighing of the evidence and are authorized to disagree with its determination, we must afford it appropriate deference so as to not intrude on the jury's province as judge of the weight and credibility of witness testimony. *Id.*

 To prove unlawful possession of a firearm by a felon, the State must establish that the accused was previously convicted of a felony offense and possessed a firearm after the conviction and before the fifth anniversary of his release from confinement or from supervision under community supervision, parole, or mandatory supervision, whichever date is later.[4] TEX.

---

3. This denial is the subject of appeal in cause number 06–02–00144–CR, 2003 WL

21665013, (Tex.App.-Texarkana July 17, 2003).

4. Section 46.04(a) of the Texas Penal Code

PEN.CODE ANN. § 46.04(a); *Martinez v. State*, 986 S.W.2d 779, 780 (Tex.App.-Dallas 1999, no pet.). Possession is defined as "actual care, custody, control, or management." TEX. PEN.CODE ANN. § 1.07(a)(39) (Vernon 2003). To support a conviction for possession of a firearm, the State must show (1) that the accused exercised actual care, control, or custody of the firearm, (2) that the accused was conscious of his or her connection with it, and (3) that he or she possessed the firearm knowingly or intentionally. *See Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App.1995); *Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.-Texarkana 1998, pet. ref'd).

■ Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his or her control of the thing for a time sufficient to permit the possessor to terminate his or her control. TEX. PEN.CODE ANN. § 6.01(b) (Vernon 2003). The State may rely on direct or circumstantial evidence, but must prove that the "accused's connection with the contraband was more than just 'fortuitous.'" *Brown*, 911 S.W.2d at 747. The State must prove this connection by establishing "affirmative links" which demonstrate the accused was aware of the object, knew what it was, and recognized his or her connection to it. *Gill v. State*, 57 S.W.3d 540, 544 (Tex.App.-Waco 2001, no pet.).

■ Factors that may establish such affirmative links include whether: (1) the contraband was in a car driven by the accused; (2) the contraband was in a place owned by the accused; (3) the contraband was conveniently accessible to the accused; (4) the contraband was in plain view; (5) the contraband was found in an enclosed space; (6) the contraband was found on the same side of the car as the accused; (7) the conduct of the accused indicated a consciousness of guilt; (8) the accused had a special relationship to the contraband; (9) occupants of the automobile gave conflicting statements about relevant matters; and (10) affirmative statements connect the accused to the contraband. *Nguyen v. State*, 54 S.W.3d 49, 53 (Tex.App.-Texarkana 2001, pet. ref'd). The State need not show a certain number of these factors to make an affirmative connection between the accused and the firearm; the logical force or the degree of connection is more important to our analysis. *Davis v. State*, 93 S.W.3d 664, 667–68 (Tex.App.-Texarkana 2002, pet. ref'd). Evidence which established only a strong suspicion or a mere probability is insufficient to support a conviction. *Young v. State*, 752 S.W.2d 137, 141 (Tex.App.-Dallas 1988, pet. ref'd).

## Legal Sufficiency

■ Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt all essential elements of the offense of unlawful possession of a firearm by a felon.

In *Davis*, this Court heard a similar challenge to the legal and factual sufficiency of the evidence. *See Davis*, 93 S.W.3d at 667. The State's evidence showed that authorities found a shotgun containing a fired casing under the bed in the one-

provides:
> A person who has been convicted of a felony commits an offense if he possesses a firearm:
> (1) after conviction and before the fifth anniversary of the person's release from confinement following conviction of the fel-

ony or the person's release from supervision under community supervision, parole, or mandatory supervision, whichever date is later; or
> (2) after the period described by Subdivision (1), at any location other than the premises at which the person lives.

bedroom residence in which Davis had lived for nearly one year. *Id.* Additionally, the police officer, responding to calls of a loud argument between Davis and his wife, heard a shot fired from inside the house seconds after she observed Davis lock himself inside. *Id.* From this evidence, this Court concluded that the State's evidence was legally sufficient and that a rational jury could have found beyond a reasonable doubt that Davis knowingly possessed the shotgun. *Id.*

In effect, the evidence in this case is comparable to that presented in *Nguyen. See Nguyen,* 54 S.W.3d at 54–55. In that case, the driver of the car in which Nguyen was a passenger and in which the firearm was found did not pull over immediately after an officer so directed. *Id.* From this delay, a rational trier of fact could have found an indication of consciousness of guilt. *Id.* The police officer testified to having seen Nguyen lean between the front and back seats, as if he were hiding the firearm. *Id.* Additionally, the driver and Nguyen gave inconsistent reasons as to why they were going to Houston. *Id.* Viewing this evidence in the light most favorable to the verdict, this Court concluded a rational jury could have found beyond a reasonable doubt the essential elements of possession of a firearm by a felon. *Id.*

Here, we find sufficient evidence. The shotgun was found in the cab of the truck in which Smith was the only occupant. The jury also could have concluded that Smith's flight from Grandfield was indicative of a consciousness of guilt. Additionally, the fact that the firearm was on the floorboard of the truck could have led the jury to determine the firearm was easily accessible to Smith. This evidence, viewed in the legal sufficiency prism, establishes more than the mere presence of the firearm in the truck with Smith. From

Smith's attempt to evade police, the proximity and position of the firearm to Smith inside the truck, and the fact he was the sole occupant of the truck, the jury could have rationally concluded beyond a reasonable doubt that Smith exercised sufficient care, custody, and control of the firearm to be said to have knowingly possessed the shotgun.

**Factual Sufficiency**

Our factual sufficiency review is a closer call, but we conclude the evidence is factually sufficient to support Smith's conviction. First, and most important, Smith was in exclusive possession of the truck in which the weapon was located and had been in exclusive possession thereof for at least two days before the chase and his arrest. Smith was driving the truck and tried to flee apprehension. The weapon was in the cab of the truck, accessible to Smith. There is no evidence anyone else had access to or control over the vehicle during Smith's two days of unauthorized possession. There is also no evidence the weapon belonged to, or was placed in the truck by, anyone other than Smith. Of course, there is no evidence of the source of the weapon.

In *Davis,* the evidence that was legally sufficient was also factually sufficient in that the evidence did not support an alternative theory of possession, nor did it suggest the firearm belonged to anyone other than Davis. *Davis,* 93 S.W.3d at 668. The verdict, therefore, was not against the overwhelming weight of the evidence. *Id.* In this case, there is no evidence the firearm belonged to anyone other than Smith, and nothing other than speculation would suggest any alternative theory of possession.

*Nguyen* is worth our close examination, because the evidence against Nguyen was held legally sufficient but factually insufficient. *Nguyen,* 54 S.W.3d at 55. Nguyen

did not own the car in which the officer found the gun. *Id.* Nguyen's delay in pulling over was only twenty seconds, during which time the driver did not increase speed. *Id.* Moreover, even that delay in pulling over could have been attributable to the absence of overhead lights on the patrol car. *Id.* This evidence, in conjunction with the fact that the officer did not see Nguyen with the firearm and the lack of fingerprint evidence connecting Nguyen to the firearm, outweighed the evidence supporting Nguyen's conviction. *Id.*

In this case, Smith actively and clearly fled from apprehension. Smith's flight from Grandfield was certainly evidence of conscious guilt. Exactly why Smith exhibited his guilty state of mind, whether because of the vehicle or the weapon, or both, is uncertain. Based on this event, in a different case, the jury convicted Smith of unauthorized use of a motor vehicle,[5] conduct which could have provided an alternate source for his consciousness of guilt. In other words, it is not certain that Smith's flight necessarily indicated a consciousness of guilt solely from possessing the weapon. Yet a rational jury could reasonably believe Smith's guilty behavior sprung at least in part from the presence of the weapon.

It is also true there was no testimony showing Smith holding or handling the firearm, nor any fingerprint evidence connecting him with it. But Smith, the sole occupant of the truck containing the weapon in the floorboard, fled apprehension. While Smith did not own the truck, he had been in (unauthorized) possession of it for at least two days, without any evidence that anyone else had possession of, or access to, the vehicle during that time. While the evidence is certainly not conclu-

sive about the location of the weapon in the vehicle, a rational jury could reasonably believe from the evidence that the weapon was in the floor of the front seat, reasonably accessible to Smith, or at least that such location was more likely than other, less accessible, locations. While the chase-ending accident could have caused the weapon to move to the location in which it was found, there is no evidence that such movement occurred.

From our neutral review of the record, we hold that Smith's conviction was not against the overwhelming weight of the evidence. Therefore, we conclude the State's evidence is factually sufficient to support the jury's determination that Smith knowingly possessed the firearm.

Accordingly, we affirm the judgment.

---

**5.** The subject of appeal in cause number 06–02–00145–CR, 109 S.W.3d 80 (Tex.App.-Texarkana 2003).