

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00057-CR

_____

JERMAINE RAY GORDY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 114th District Court
Smith County, Texas
Trial Court No. 114-1426-17

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

Jermaine Ray Gordy appeals his conviction for unlawful possession of a firearm by a felon. *See* TEX. PENAL CODE ANN. § 46.04(a) (West 2011).[1] In his sole point of error, Gordy argues that the evidence was insufficient to prove that he actually possessed any firearm. After reviewing the record and applicable law, we find the evidence sufficient to support Gordy's conviction. We therefore affirm the trial court's judgment and sentence.

## I.     Facts and Background

In early August 2017, Gordy was on parole, but a parole violation warrant had been issued for his arrest. Smith County law enforcement officers charged with serving the warrant obtained information on Gordy's possible whereabouts. Based on that information, five officers in three unmarked vehicles staked out a residence in Tyler.

As the officers were waiting, Gordy and a companion, Jason McKinney, left the residence and got into a silver Honda Accord. As Gordy backed the car down a long, narrow, private driveway, one of the law enforcement officers activated his vehicle's blue and red flashing lights and siren and pulled into the driveway to block Gordy's path. Gordy accelerated his vehicle and rammed the front of the law enforcement vehicle. The other two law enforcement vehicles—also flashing red and blue lights and with sirens activated—then moved in to "pin" or restrict Gordy's movement.

---

[1] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Twelfth Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

Officers surrounded Gordy's vehicle and ordered both occupants out of the vehicle. Neither occupant immediately complied with the officers' commands. The officers then removed McKinney and placed him in handcuffs. At the time he was handcuffed, McKinney had an empty holster on his belt.

Gordy, however, refused to exit the vehicle. Instead, officers observed him reaching from his position in the driver's seat to the area behind the passenger's seat. The officers then began removing Gordy. After a struggle with three officers, Gordy was ultimately subdued and handcuffed as well. The officers then searched the car and found two pistols and a second holster.

One pistol was found between the passenger's seat and the passenger's door, near where McKinney had been sitting. That pistol fit into the holster McKinney was wearing when he was handcuffed. Another pistol was found behind the passenger's seat, in the area where officers had seen Gordy reaching before he was removed from the vehicle. All of the officers testified that the second pistol was in Gordy's reach or "wingspan." That pistol fit into the second holster found on the passenger's-side floorboard near the center of the vehicle. An attachment for the second holster was found on the driver's-side floorboard.

McKinney testified for Gordy. Despite the fact that he also faced a charge of felon in possession of a firearm stemming from the same incident, McKinney testified that he possessed both weapons and their holsters, not Gordy. He also claimed that he wore both pistols holstered and that, because he was wearing two shirts at the time he was arrested, he did not believe that Gordy even knew he was armed.

Chance Sanders also testified for Gordy. Sanders testified that she knew Gordy and McKinney socially and that she had seen them many times. She testified that she had never seen Gordy in possession of a firearm. On the other hand, she testified that McKinney wore a holstered sidearm every time she saw him. When she was shown a photograph of the pistol that officers found behind the passenger seat—that is, the one that officers testified was within Gordy's reach and that fit the holster also within his reach—Sanders said it looked "exactly like the weapon that Mr. McKinney carried." Yet, Sanders also said that McKinney's holstered weapon was visible at his hip, and she admitted that it would have been unusual to see McKinney wearing two weapons at the same time.[2]

## II.     Standard of Review

In evaluating the sufficiency of the evidence, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate

---

[2]Gordy does not challenge the sufficiency of the evidence proving his status as a felon within the five-year prohibition period. *See* TEX. PENAL CODE ANN. § 46.04(a)(1).

4

facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Possession is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2017). To obtain a conviction for possession of a firearm, the State must show that the accused not only exercised actual care, control, or custody of the firearm, but also that he was conscious of his connection with it and that he possessed it knowingly. *See Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Smith v. State*, 118 S.W.3d 838, 842 (Tex. App.—Texarkana 2003, no pet.). "[E]vidence which affirmatively links him to it suffices for proof that he possessed it knowingly." *Brown*, 911 S.W.2d at 747. However, these affirmative links must demonstrate that "the accused was aware of the object, knew what it was, and recognized his or her connection to it." *Smith*, 118 S.W.3d at 842 (citing *Gill v. State*, 57 S.W.3d 540, 544 (Tex. App.—Waco 2001, no pet.)).

The evidence showing these links may be direct or circumstantial, but the evidence must establish that the connection between the accused and the firearm is more than fortuitous. *Davis v. State*, 93 S.W.3d 664, 667 (Tex. App.—Texarkana 2002, pet. ref'd). Therefore, the mere presence of the accused at the location where a firearm is found is not sufficient, in and of itself, to establish his knowing possession. *See Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). However, the defendant's presence or proximity to the weapon, combined with other evidence, may be sufficient to establish this element. *Id.*

Certain factors, either alone or in combination, may be considered in deciding whether the evidence is legally sufficient to circumstantially establish an accused's knowing possession of a

5

firearm. *See James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *Bates v. State*, 155 S.W.3d 212, 216–17 (Tex. App.—Dallas 2004, no pet.); *Smith*, 118 S.W.3d at 842; *Nguyen v. State*, 54 S.W.3d 49, 53 (Tex. App.—Texarkana 2001, pet. ref'd), *overruled on other grounds by Fagan v. State*, 362 S.W.3d 796 (Tex. App.—Texarkana 2012, pet. ref'd). These factors include: (1) the defendant's presence when the search was conducted, (2) whether the firearm was in plain view, (3) whether the defendant was in close proximity to and had access to the firearm, (4) whether the defendant had a special connection to the firearm, (5) whether the defendant possessed other contraband when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether the defendant owned or had the right to possess the place where the firearm was found, (10) whether the place where the firearm was found was enclosed, (11) whether conflicting statements on relevant matters were given by the persons involved, and (12) whether the defendant's conduct indicated a consciousness of guilt. Nevertheless, it is the logical force of the links, rather than the number of links, that is dispositive. *Evans*, 202 S.W.3d at 162; *Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref'd). Further, the links need not exclude every other reasonable hypothesis but the defendant's guilt. *Brown*, 911 S.W.2d at 748.

### III.    Analysis

Obviously, Gordy was present when the search was conducted, and the vehicle where the pistol was found was enclosed. In addition, there was evidence that Gordy attempted to flee. When Gordy saw the first law enforcement vehicle—unmarked but with blue and red lights flashing and siren sounding—he accelerated, in reverse, and smashed into the law enforcement car. Moreover, he did not immediately comply with officers' instructions to vacate the car, and he resisted their efforts to such an extent that he had to be wrestled to the ground and struck twice before he could be handcuffed.

Also, there was evidence that Gordy was in close proximity to the firearm and had access to it. One pistol was in plain view and was within Gordy's reach. A holster, also in plain view, and within Gordy's reach, was found on the passenger's-side floorboard near the driver's side. An attachment for that holster was found on the driver's-side floorboard. In addition, Gordy made furtive gestures, reaching around to the back seat (where one pistol was found).

Two men, two holsters, and two pistols in one car allow for a reasonable inference that each man was in care, custody, control, or management of at least one pistol.[3] This inference is further supported by the fact that McKinney, the passenger, wore at his waist a holster fitting only the gun nearest where McKinney had sat in the passenger's seat. The second gun—which fit the other holster—was found within Gordy's reach, and an attachment for that second holster was found on the driver's-side floorboard, where Gordy sat. The logical force of the facts in this case

---

[3]Possession need not be exclusive. *See McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985) (regarding possession of dangerous drugs and narcotics).

7

supports a reasonable inference that Gordy, a felon, was in possession of a firearm in the time period proscribed by Section 46.04 of the Texas Penal Code.

In *Corpus v. State*, the Fourteenth Court of Appeals found the evidence sufficient to prove that a felon unlawfully possessed a firearm in a case remarkably similar to the present case. *Corpus v. State*, 30 S.W.3d 35, 38 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). In that case, Corpus was driving a car that was registered in his name. *Id*. at 37. A firearm was discovered in an enclosed place, within Corpus' reach, behind the passenger's seat after officers observed Corpus making furtive gestures in that area. *Id*. Also, as in this case, Corpus' passenger claimed ownership of the gun. *Id*. at 38. The Fourteenth Court of Appeals held that those circumstances, together with others not present here, supported the jury's verdict that Corpus illegally possessed a firearm. *Id*. As in *Corpus*, we find the logical force of the circumstances here support a finding of guilt beyond a reasonable doubt.

Gordy stresses the facts that he and McKinney were in the vehicle and that McKinney claimed ownership of both firearms. However, these arguments are not persuasive. First, this testimony merely presented conflicting evidence, and it was the jury's responsibility to weigh the evidence and resolve any conflicts or inconsistencies. *See Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986) (holding that "[r]econciliation of conflicts and contradictions in the evidence is within the exclusive province of the jury"). Second, the State's proof need not exclude "all reasonable alternative hypotheses that are inconsistent with appellant's guilt." *Cantu v. State*, 395 S.W.3d 202, 207 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). While the jury could have

8

found that McKinney was truthful when he testified that both guns were his, the jury was also free to discount his testimony.

Gordy also argues that the evidence merely showed that he may have been in possession of a holster and that possession of a holster is not sufficient. He cites *Harris v. State* as support for his argument. *Harris v. State*, 532 S.W.3d 524 (Tex. App.—San Antonio 2017, no pet.). In that case, Harris was a passenger in a vehicle stopped by police. *Id*. A closed duffel bag or backpack containing a pistol was found between Harris' legs when the vehicle was stopped. *Id*. Another pistol was beneath the driver's seat. *Id*. at 527.

In finding the evidence to be insufficient, the appellate court pointed out that the gun in the bag at Harris' feet was not in plain view and that nothing in the bag connected the gun to Harris. *Id*. at 531. Also, the court of appeals pointed out that Harris neither owned nor drove the vehicle. *Id*. Moreover, Harris was cooperative with the officers and made no suspicious movements. *Id*. at 527, 530. In addition, although marihuana was found somewhere in the car, and although officers smelled burned marihuana from the vehicle, Harris was not charged with a drug offense, and the record did not clearly explain where the marihuana was found. *Id*. at 532. Consequently, the court of appeals found the evidence insufficient to link Harris with the gun in the bag at his feet, and it overturned his conviction. *Id*. at 534.

In the present case, however, there was testimony that Gordy's vehicle belonged to his wife or girlfriend and, therefore, Gordy had some connection to the vehicle.[4] Also, Gordy exhibited

---

[4]Investigator Gary Wilbanks could not recall whether ownership of the Accord was established. He thought registration of the vehicle was to "a girlfriend or a wife," but was not sure. McKinney testified that the Honda Accord belonged to Gordy's girlfriend.

substantial suspicious behavior, such as accelerating and ramming into a law enforcement vehicle attempting to stop him and reaching into the back seat as officers commanded him to exit the car. Finally, as explained above, the testimony established that the second gun—as well as the second holster—were within Gordy's reach and that he was seen reaching to the back seat passenger area despite being commanded to exit the vehicle. Consequently, *Harris* is distinguishable, and on the evidence in this case, a rational jury could reasonably infer that Gordy possessed one of the guns found in the car.

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:    August 22, 2018
Date Decided:      September 19, 2018

Do Not Publish

10