

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-22-00120-CR

LUTHERAN GORDON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 29573

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Lamar County jury convicted Lutheran Gordon of possessing more than four, but less than two hundred, grams of methamphetamine, a second-degree felony.[1]  After Gordon pled true to the State's punishment enhancement allegations, the trial court sentenced him to forty years' imprisonment.  In his sole point of error on appeal, Gordon argues that the jury's finding of guilt was not supported by legally sufficient evidence.  Because the record reveals sufficient evidence of guilt, we affirm the trial court's judgment.

## I.      Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt."  *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)).  "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented."  *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)).  "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Supp.).

2

(citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

In our review, we consider "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985)). It is not required that each fact "point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Paroline v. State*, 532 S.W.3d 491, 498 (Tex. App.—Texarkana 2017, no pet.) (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13 (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Williamson*, 589 S.W.3d at 298 (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240). Here, to obtain a conviction under the relevant statute and the indictment, the State was required to prove beyond a reasonable doubt that Gordon

(1) intentionally or knowingly (2) possessed (3) four or more, but less than two hundred, grams (4) of methamphetamine, including any adulterants or dilutants. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d).

## II.    The Evidence at Trial

Jeremy Helms, a patrol officer with the Paris Police Department, testified that he knew Gordon had outstanding warrants for his arrest when he spotted Gordon during his patrol. Helms activated his body camera, stepped out of his patrol unit, and asked Gordon to walk towards him. Gordon immediately ran, prompting Helms to chase him with the patrol unit. Helms testified, and his body-camera footage showed, that Gordon was carrying a blue shirt as he was running away.

Helms said that Gordon ran into a "gravel and dirt" parking lot at an apartment complex, tripped, and fell to the ground. According to Helms, Gordon left the shirt on the ground but got back up and continued running. Although the body-camera footage did not show the moment that Gordon dropped the blue shirt, it showed him running away from the shirt, which was on the ground just a few feet away. Helms apprehended Gordon, arrested him, and placed him in the back of his patrol unit. Helms went to retrieve the dirtied blue shirt and then noticed a clear, plastic bag containing a "clear crystal-like" substance on the ground in the general proximity of where Gordon had dropped the shirt. The Texas Department of Public Safety Crime Laboratory tested the substance, which weighed 5.81 grams, and confirmed that it contained methamphetamine.

Helms admitted that he never saw Gordon throw the plastic bag but testified that he believed it was recently deposited because it was clean and dry even though it "had been raining off and on all day" and the parking lot was "damp." Although Helms testified that it was possible that the bag could have been thrown earlier in the day by someone else, he believed it "highly unlikely."

## III. The Jury's Verdict of Guilt Is Supported by Legally Sufficient Evidence

"Possession" is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39). To obtain a conviction for possession of a controlled substance, the State must show that the accused not only "exercised actual care, control, or custody" of the controlled substance, but that he was conscious of his connection with it and "possessed it knowingly." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Smith v. State*, 118 S.W.3d 838, 842 (Tex. App.—Texarkana 2003, no pet.).

"[E]vidence which affirmatively links [the accused] to [the drugs] suffices for proof that he possessed it knowingly," *Brown*, 911 S.W.2d at 747, because it tends to show "that the accused's connection with the contraband was more than just 'fortuitous,'" *Gill v. State*, 57 S.W.3d 540, 544 (Tex. App.—Waco 2001, no pet.) (quoting *Harris v. State*, 994 S.W.2d 927, 933 (Tex. App.—Waco 1999, pet. ref'd)). Even so, the State must demonstrate that "the accused was aware of the object, knew what it was, and recognized his or her connection to it." *Smith*, 118 S.W.3d at 842 (citing *Gill*, 57 S.W.3d at 544). For this reason, the mere presence of the accused at the location where contraband is found is not sufficient, in and of itself, to establish

his knowing possession. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016); *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).

"When the contraband is not in the exclusive possession of the defendant, a fact[-]finder may nonetheless infer that the defendant intentionally or knowingly possessed the contraband if there are sufficient independent facts and circumstances justifying such an inference." *Tate*, 500 S.W.3d at 413–14. Under the links test, if combined with other evidence, the accused's presence or proximity may be sufficient to establish knowing possession. *Id.* at 414. Some factors that may be legally sufficient, either alone or in combination, to circumstantially establish an accused's knowing possession of contraband include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Id.* at 414 (quoting *Evans*, 202 S.W.3d at 162 n.12); *see Smith*, 118 S.W.3d at 842; *Nguyen v. State*, 54 S.W.3d 49, 53 (Tex. App.—Texarkana 2001, pet. ref'd), *overruled on other grounds by Fagan v. State*, 362 S.W.3d 796 (Tex. App.—Texarkana 2012, pet. ref'd).

It is the logical force of the links, rather than the number of links, that is dispositive. *Evans*, 202 S.W.3d at 162; *Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pet. ref'd). Also, the links need not exclude every other reasonable hypothesis but the defendant's

6

guilt. *See Tate*, 500 S.W.3d at 413; *Brown*, 911 S.W.2d at 748. Even though the factors in the links test guide us, "ultimately the inquiry remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 500 S.W.3d at 414 (citing *Jackson*, 443 U.S. at 318–19).

Here, there was no evidence of several of the links test factors. Gordon (1) was not under the influence of drugs when arrested, (2) possessed no other contraband or narcotics, (3) made no incriminating statements, (4) did not smell of contraband, (5) did not own an apartment attached to the parking lot, (6) was not in an enclosed space, and (7) was not found with a large amount of cash. Even so, six factors supported the jury's verdict.

When Helms spotted Gordon and asked him to stop, Gordon immediately fled, indicating a consciousness of guilt.[2] The body-camera footage established that Gordon was the only person present in the parking lot during Helms's chase and search of the ground. The plastic bag containing methamphetamine was found in plain view, relatively close to where Gordon's shirt was found after he had dropped it.[3] From these facts, and Helms's testimony that the bag was clean and dry even though the dirt and gravel parking lot was dirty and damp, the jury could infer that Gordon had access to the plastic bag and had kept it in a clean, dry place before dropping it on the ground, either on his person or wrapped in the shirt. The jury could have also found that Gordon fell intentionally for the purpose of distracting Helms by dropping his shirt on

---

[2]Gordon argues that he fled because he had outstanding warrants, but the jury could have determined it was also because he was carrying contraband.

[3]Gordon notes that Helms was unable to state exactly how far the drugs were found from the shirt, but the body-camera footage shows that the items were in the same vicinity.

the ground while attempting to rid himself of the contraband and that the act of falling was a furtive gesture.

"[A]ll reasonable inferences from the evidence must be resolved in favor of the jury's guilty verdict." *Id.* at 417. Considering the cumulative force of all the evidence when viewed in the light most favorable to the jury's verdict, we conclude that the jury's verdict that Gordon intentionally or knowingly possessed more than four, but less than two hundred, grams of methamphetamine is supported by legally sufficient evidence. As a result, we overrule Gordon's sole point of error.

## IV.    Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:    February 13, 2023
Date Decided:      March 10, 2023

Do Not Publish