

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00235-CR

_____

JERRY DONELL HART, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 23F0623-102

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

## MEMORANDUM OPINION

Jerry Donell Hart appeals his conviction for unlawful possession of a firearm by a felon.[1] Hart claims that the evidence is insufficient to prove he was in possession of a pistol found in the vehicle he was driving. Because we find that legally sufficient evidence supports the verdict, we affirm the trial court's judgment.

## I. Background

At a pre-shift briefing in early May 2023, Texarkana, Texas, police officers were told that Hart had a felony warrant from Arkansas and advised of the vehicle, including license plate number, that Hart was known to drive. One evening following the briefing, Texarkana, Texas, police officer Seth Mahar saw a vehicle that matched the description of Hart's vehicle. Mahar followed the vehicle and requested confirmation that it was Hart's vehicle. Mahar continued driving after he saw the vehicle pull into a residential driveway.

After receiving confirmation that that was the vehicle described in the earlier briefing, Mahar turned around and returned to the driveway and saw Hart walking up the porch steps of the residence. Mahar called out to Hart, addressing him by his first name, Jerry. Mahar's body-camera recording shows Hart on the porch, denying his name was Jerry, and instead, claiming that his name was Cory. Hart said that he would get his identification from his vehicle and ignored Mahar's instructions to stop. Hart then ran, and Mahar pursued.

Hart first ran towards the street, but then circled back to his vehicle. By that time, a second officer, Kevin Cornelious, had arrived. The two officers stopped Hart as he tried to open

[1]*See* TEX. PENAL CODE ANN. § 46.04 (Supp.).

the front door to his vehicle. Hart ignored their instructions to place his hands behind his back. Hart continued to resist the officers after they placed him on the ground. Only after Cornelious pepper-sprayed Hart were the officers able to handcuff and arrest Hart.

In plain view, on the console inside the vehicle, Mahar saw a Taurus 9mm pistol. The vehicle was registered to a woman who officers determined had some relationship with Hart. After taking Hart into custody, Texarkana, Texas, police officer James Ward finished inventorying the vehicle. He found Hart's identification card and a bag containing 1.37 grams of methamphetamine.[2] He also found a set of digital scales and a pipe in the vehicle.

On cross-examination, Mahar agreed that he saw a person walking toward the road. From Mahar's body-camera recording, the person appeared to be leaving the house next door to the house where Hart had parked. Mahar testified that nothing suggested that the person had anything to do with the investigation, and neither Mahar nor any other law enforcement officer spoke to the person. Mahar also testified that there was nothing to suggest that any other person was in the vehicle with Hart.

The residential driveway where Hart parked his vehicle was not Hart's property. Ward testified that a man came out on the porch and indicated that Hart did not have permission to park in the driveway. That person asked Ward to have the vehicle removed from his property. Mahar also testified that there was nothing to suggest that Hart lived at the residence where he came to a stop. Nothing in the record suggested that the man on the porch knew Hart.

---

[2]The methamphetamine was submitted to the Texas Department of Public Safety Crime Laboratory in Tyler. A chemist there tested the substance; identified it as methamphetamine; and testified to her qualifications, testing procedure, and results.

## II.     The Evidence Was Sufficient[3]

### A.     Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* at 298 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common

---

[3]The State produced a judgment for the felony conviction of forgery from January 2023. Hart does not challenge the evidence of his status as a felon at the time of the events described above.

design to do the prohibited act.'" *Id.* at 297 (quoting *Hooper*, 214 S.W.3d at 13). "It is not required that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* at 297–98 (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part*, 544 S.W.3d 844 (Tex. Crim. App. 2018)).

The jury, as "the sole judge of the credibility of the witnesses and the weight to be given their testimony[, could] 'believe all of [the] witnesses' testimony, portions of it, or none of it.'" *Id.* at 297 (second alteration in original) (quoting *Thomas v. State*, 444 S.W.3d 4, 10 (Tex. Crim. App. 2014)). "We give 'almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)).

When the allegations are possession of some form of contraband, this Court reviews the evidence of possession of the contraband. "Possession" is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (Supp.). To obtain a conviction for possession of a firearm, the State must show that the accused not only "exercised actual care, control, or custody of the [firearm], but [that he was] conscious of his connection with it" and

5

"possessed it knowingly." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *see Smith v. State*, 118 S.W.3d 838, 842 (Tex. App.—Texarkana 2003, no pet.). "[E]vidence which affirmatively links him to it suffices for proof that he possessed it knowingly." *Brown*, 911 S.W.2d at 747. However, these affirmative links must "demonstrate [that] the accused was aware of the object, knew what it was, and recognized his or her connection to it." *Smith*, 118 S.W.3d at 842 (citing *Gill v. State*, 57 S.W.3d 540, 544 (Tex. App.—Waco 2001, no pet.)). The evidence shows those links may be direct or circumstantial, but the evidence must establish that the connection between the accused and the firearm is more than fortuitous. *Davis v. State*, 93 S.W.3d 664, 667 (Tex. App.—Texarkana 2002, pet. ref'd). Therefore, the mere presence of the accused at the location where a firearm is found is not sufficient, in and of itself, to establish his knowing possession. *See Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). If combined with other evidence, however, his presence or proximity, combined with such other evidence, may be sufficient to establish this element. *See id.*

Some factors that may be used, either alone or in combination, to circumstantially establish an accused's knowing possession of contraband include: (1) his presence when a search is conducted, (2) whether the contraband was in plain view, (3) whether he was in close proximity to and had access to the contraband, (4) whether he had a special connection to the contraband, (5) whether he possessed other contraband when arrested, (6) whether he made incriminating statements when arrested, (7) whether he attempted to flee, (8) whether he made furtive gestures, (9) whether he owned or had the right to possess the place where the contraband was found, (10) whether the place where the contraband was found was enclosed, (11) whether

6

conflicting statements on relevant matters were given by the persons involved, and (12) whether his conduct indicated a consciousness of guilt. *See James v. State*, 264 S.W.3d 215, 219 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *Bates v. State*, 155 S.W.3d 212, 216–17 (Tex. App.—Dallas 2004, no pet.); *Smith*, 118 S.W.3d at 842; *Nguyen v. State*, 54 S.W.3d 49, 53 (Tex. App.—Texarkana 2001, pet. ref'd), *overruled on other grounds by Fagan v. State*, 362 S.W.3d 796 (Tex. App.—Texarkana 2012, pet. ref'd). However, it is the logical force of the links, rather than the number of links, that is dispositive. *Evans*, 202 S.W.3d at 162; *Smith v. State*, 176 S.W.3d 907, 916 (Tex. App.—Dallas 2005, pets. ref'd). Further, the links need not exclude every other reasonable hypothesis but the defendant's guilt. *Brown*, 911 S.W.2d at 748.

## B. Analysis

Hart's single point of error is based on the facts (1) that Mahar did not testify to seeing Hart in the vehicle or getting out of the vehicle and (2) that Mahar did not speak to the person seen walking across the lawn next to the residence where Hart parked the vehicle.

Here, police were alerted to the possible vehicle that Hart might be driving, along with that vehicle's license plate number. A warrant had also been issued for Hart's arrest. Although no law enforcement agent saw Hart driving or exiting the vehicle, Mahar found the vehicle Hart was known to drive parked at a residence, and Hart was standing on the porch of that residence. Mahar called out to Hart by his first name, but Hart denied that that was his name and walked back toward the vehicle. Mahar told Hart to stop and not to get back in the vehicle. Then Hart "t[ook] off running from" Mahar. Hart looped around and ran back toward the vehicle and "trie[d] to open the front door to it." "Evidence of flight . . . shows a consciousness of guilt of

7

the crime for which the defendant is on trial." *Bigby v. State*, 892 S.W.2d 864, 884 (Tex. Crim. App. 1994).

We also take into consideration that, along with the pistol, the officers also found methamphetamine, Hart's identification card, digital scales, and a pipe in the vehicle. The drugs, scales, and pipe are another suspicious circumstance, and the identification card is a strong link between the vehicle, the pistol, and Hart. Those circumstances suggest a connection between Hart and the vehicle where the pistol and the methamphetamine were found.

Finally, there is no suggestion from the evidence that the person seen walking across the neighboring yard had anything to do with the facts of this case. As a result, the logical force of all the above circumstances would allow a reasonable jury to find that Hart was driving the vehicle and knowingly possessed the firearm found in the vehicle.

## III.     Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:     May 30, 2024
Date Decided:       June 4, 2024

Do Not Publish

8