COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-178-CR

 

 

MICHAEL DEWAYNE BOTTOMS                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                         APPELLEE

 

                                              ------------

 

           FROM
THE 396TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Introduction








In four issues, appellant
Michael Dewayne Bottoms challenges the legal and factual sufficiency of the
evidence to support his conviction for unauthorized use of a motor vehicle, the
trial court=s failure to
charge the jury on the defense of mistake of fact, and the effectiveness of his
trial counsel.  We affirm.

Background Facts

On August 22 or 23, 2006, Amy
Davis, a supervisor with Flo Control, an oilfield service company then located
in Bridgeport, Texas, noticed that one of the company=s work trucks was missing.  She
called the Bridgeport police and reported the truck stolen.  Davis testified that no one had permission to
drive the truck on August 22-24, 2006.  

On August 24, 2006, Officer
Robert Thetford of the Fort Worth Police Department was performing surveillance
on several homes in north Fort Worth looking for stolen vehicles, house
burglars, and any suspicious activity. 
Officer Thetford saw a white truck parked in front of one of the houses
he was watching; he knew that the persons staying at that house were Aactive thieves@ and that
police had received a report about there possibly being stolen vehicles at the
house.  He ran a license plate check on
the truck and found out that it was Apossibly stolen.@  








While watching the house,
Officer Thetford saw a man later identified as appellant, come out of the house
and get into the truck.  Officers M.T.
Johnson and Ernesto Tamayo arrived at the house as backup.  Although, like Officer Thetford, they were
riding in an unmarked car, they were wearing black T-shirts with AFort Worth Police@ on the front, unbuttoned shirts over the T-shirts, gun belts, jeans,
and tennis shoes.  They each had a weapon
and a badge on their belts.  

Officers Johnson and Tamayo
saw appellant back the white truck into the alley, and they followed in their
unmarked car.  They parked at the
entrance to the alley.  Officer Johnson
got out of the car, drew his weapon, identified himself as an officer, and ordered
appellant to stop the truck.  The
officers were about eight to ten yards away from appellant, and Officer Johnson
could see him clearly.  According to
Officer Johnson, appellant looked at the officers and then accelerated in
reverse down the alleyway away from the officers.  As he was driving in reverse, appellant
struck two cars that were parked behind the truck at the alley=s exit; he was trying to push them out of his way.  While this was happening, the officers were
yelling, Astop,
police,@ or Apolice,
down, police, down,@ numerous
times in loud voices.  After determining
that he was unable to push the cars out of the way, appellant put the truck
into drive and drove directly at the officers at full speed.  The officers jumped out of the way; the truck
hit a tree and then came to a stop.








Officer Johnson pulled
appellant out of the truck by his feet. 
Appellant kicked at and fought with the officers; eventually, another
officer (who responded) had used a Taser on appellant.  The officers arrested appellant.  Davis later identified the truck as the one
missing from Flo Control=s
premises.  The State charged appellant with unauthorized use of a motor
vehicle.  He pled not guilty, but a jury
convicted him and assessed his punishment at six years= confinement. 

Sufficiency of the Evidence

In his first two issues,
appellant contends that the evidence is legally and factually insufficient to
support the conviction.

Standard of Review-Legal Sufficiency

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence
in the light most favorable to the prosecution in order to determine whether
any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v.
State, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Standard of Review-Factual Sufficiency








When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. 
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); Drichas
v. State, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder=s
determination is clearly wrong and manifestly unjust or whether conflicting
evidence so greatly outweighs the evidence supporting the conviction that the
fact-finder=s
determination is manifestly unjust.  Watson,
204 S.W.3d at 414-15, 417; Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  To reverse under the second
ground, we must determine, with some objective basis in the record, that the
great weight and preponderance of all the evidence, though legally sufficient,
contradicts the verdict.  Watson,
204 S.W.3d at 417.








In determining whether the
evidence is factually insufficient to support a conviction that is nevertheless
supported by legally sufficient evidence, it is not enough that this court Aharbor a subjective level of reasonable doubt to overturn [the]
conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s resolution of a conflict in the evidence.  Id. 
We may not simply substitute our judgment for the fact-finder=s.  Johnson, 23 S.W.3d at
12; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  Unless the record clearly reveals that a
different result is appropriate, we must defer to the jury=s determination of the weight to be given contradictory testimonial
evidence because resolution of the conflict Aoften turns on an evaluation of credibility and demeanor, and those
jurors were in attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at
8.  Thus, we must give due deference to
the fact-finder=s
determinations, Aparticularly
those determinations concerning the weight and credibility of the evidence.@  Id. at 9.

Applicable Law

A person commits the offense
of unauthorized use of a motor vehicle if he intentionally or knowingly
operates a motor-propelled vehicle without the effective consent of the
owner.  Tex.
Penal Code Ann. ' 31.07(a)
(Vernon 2003).  An Aowner@ is a person
who has title to the property; possession of the  property, whether lawful or not, or a greater
right to possession of the property than the actor.  Id. ' 1.07(35)(a) (Vernon Supp. 2007). 
@Effective consent@ includes consent given by a person legally authorized to act for the
owner; it does not include consent Agiven by a person the actor knows is not legally authorized to act for
the owner.@  Id. ' 1.07(19)(b) (Vernon Supp. 2007).  Section 31.07 is not a strict liability
offense.  Gardner v. State, 780
S.W.2d 259, 262 (Tex. Crim. App. 1989). 
The so‑called Aforbidden conduct@Coperating a motor vehicleCis made unlawful only when the defendant is aware of the attendant
circumstancesCthat the
operation of the vehicle is without the owner=s consent.  Id. at
262-63.








Appellant contends that the
evidence is insufficient to prove that he did not have effective consent to
operate the vehicle because he had Sonny Wilson=s permission to drive the vehicle, and Wilson had been an employee of
Flo Control.  According to appellant, he
did not know that Wilson did not have Flo Control=s consent to operate the vehicle; thus, he cannot be guilty of
operating the vehicle without effective consent.

Davis testified at trial that
Wilson was an employee of Flo Control in 2006 but that his last day of work had
been August 8, 2006.  As an employee,
Wilson had permission to drive the company=s vehicles, but he was not supposed to take any vehicles home with him
or use them for personal business. 

Appellant testified that he
had known Wilson all his life and that he had seen Wilson in the truck Aall the time.@  Appellant did not know the truck was stolen,
and he thought it was the company truck that Wilson had permission to
drive.  Appellant contended that on
August 24, 2006, he was just moving the truck to the backyard because he,
Wilson, and the people who lived at the house were going to sell some copper
wire that had been stolen.  He testified,
AI know that Sonny did give me permission to move the vehicle.  I did not know that he did not have
permission.@ 








Appellant's version of events
differed from the officers=.  According to appellant, he
could not tell that the men in the car were police officers, nor did he hear
anyone yelling out Apolice@ or anything similar.  He was
afraid for his life because he had previously been beaten with baseball bats by
men to whom he owed money.  Appellant
contended that he Awould not
have tried to run@ had he
known that Johnson and Tamayo were police officers.  








Appellant claims that this
evidence is legally and factually insufficient to support his conviction
because it shows that (1) he had Wilson=s permission to use the truck and (2) he was not actually aware that
Wilson did not have Flo Control=s permission to use the truck. 
According to appellant, because Wilson was in possession of the truck,
under the statute he was an Aowner,@ and he
could give appellant Aeffective
consent@ to use it.  But when the State
asked appellant at trial, ADo you honestly think that the people that own these trucks would have
given you or Sonny permission to have done that [haul stolen wire]?@, appellant answered, ANo.@  Thus, it is a reasonable inference from the
evidence that appellant was aware that Wilson did not have permission to use
the truck in such a manner and, thus, that he could not give appellant Aeffective consent@ to use the truck in that way.  See
Edwards v. State, 178 S.W.3d 139, 144-45 (Tex. App.CHouston [1st Dist] 2005, no pet.) (stating that effective consent
includes consent by a person legally authorized to act for the owner).

Additionally, the jury was
entitled to disbelieve appellant=s testimony about Wilson=s alleged consent to use the truck.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Margraves v.
State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  It was also entitled to believe the officers= version about appellant=s attempt to flee and consider this evidence as consciousness of
guilt, i.e., that appellant knew he did not have the owner=s effective consent to use the vehicle.  See Smith v. State, 118 S.W.3d 838,
841, 843 (Tex. App.CTexarkana
2003, no pet.).  Therefore, after
reviewing the evidence in accordance with the applicable standards of review,
we conclude and hold that the evidence is both legally and factually sufficient
to support appellant=s
conviction.  We overrule appellant=s first and second issues.

Lack of Jury Instruction on
Mistake of Fact

In his third issue, appellant
contends that the trial court erred by refusing to give an instruction in the
jury charge on mistake of fact.

Standard of Review      








Appellate review of error in
a jury charge involves a two-step process. 
Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994).  Initially, we must determine whether error
occurred.  If so, we must then evaluate
whether sufficient harm resulted from the error to require reversal.  Id. at 731-32.  Error in the charge, if timely objected to in
the trial court, requires reversal if the error was Acalculated to injure the rights of [the] defendant,@ which means no more than that there must be some harm to the
accused from the error.  Tex. Code Crim. Proc. Ann. art. 36.19
(Vernon 2006); see also Abdnor, 871 S.W.2d at 731-32; Almanza v.
State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh=g).  In other words, a properly
preserved error will require reversal as long as the error is not
harmless.  Almanza, 686 S.W.2d at
171.  In making this determination, Athe actual degree of harm must be assayed in light of the entire jury
charge, the state of the evidence, including the contested issues and weight of
probative evidence, the argument of counsel and any other relevant information
revealed by the record of the trial as a whole.@  Id.; see also Ovalle
v. State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).








An accused is entitled to an
instruction on any defensive issue raised by the evidence, whether that
evidence is weak or strong, unimpeached or contradicted, and regardless of what
the trial court may think about the credibility of the evidence.  Granger v. State, 3 S.W.3d 36, 38
(Tex. Crim. App. 1999); Hudson v. State, 145 S.W.3d 323, 324-25 (Tex.
App.CFort Worth 2004, pet. ref=d).  But when the evidence fails
to raise a defensive issue, the trial court commits no error in refusing a
requested instruction.  Muniz v.
State, 851 S.W.2d 238, 254 (Tex. Crim. App. 1993), cert. denied, 510
U.S. 837  (1993); Hudson, 145
S.W.3d at 325.

The Texas Penal Code states
that mistake of fact is Aa defense to
prosecution that the actor through mistake formed a reasonable belief about a
matter of fact if his mistaken belief negated the kind of culpability required
for commission of the offense.@  Tex. Penal Code Ann. ' 8.02 (Vernon 2003).  The
statutory term Akind of
culpability@ means Aculpable mental state.@  Posey v. State, 966
S.W.2d 57, 70 (Tex. Crim. App. 1998). 
The defense arises, then, when there is evidence that a defendant=s mistaken reasonable belief about a matter of fact negated the
element of the culpable mental state required for the offense.  Id.

Analysis








Appellant was indicted for
unauthorized use of a motor vehicle, that is, 
intentionally or knowingly driving or operating another=s vehicle without the effective consent of the owner.  See Tex.
Penal Code Ann. ' 31.07; Posey,
966 S.W.2d at 69.  Specifically, the
indictment alleged that appellant intentionally operated a truck on August 24,
2006, without the effective consent of the truck=s owner, Amy Davis.  A defendant=s knowledge of the lack of consent is one of the elements which must
be proven.  Posey, 966 S.W.2d at
69.  Thus, appellant was entitled to an
instruction on the defense of mistake of fact if his mistaken belief that
Wilson had authority to give him permission to use the truck negated the
culpable mental state required to commit the offense of unauthorized use of a
motor vehicle.

Appellant admitted to driving
the truck, but he said that he believed 
Wilson had authority from his employer, Flo Control, to give him
permission to drive the truck. 
Appellant, however, conceded at trial that he did not think that Flo
Control would have given him or Wilson permission to use the truck to haul
stolen wire.  Thus, even if appellant
mistakenly believed that Wilson had authority to give him permission to drive
the truck, his mistake would not negate the culpable mental state required to
commit the offense of unauthorized use of a motor vehicle because he did not
believe that Wilson could give permission to use the truck for an illegal
purpose.  Therefore, the evidence did not
raise the defense of mistake of fact, and the trial court did not err by
refusing to instruct the jury on that defense. 
See Posey, 966 S.W.2d at 69-70. 
We overrule appellant=s third issue.

Effectiveness of Trial
Counsel

In his fourth issue,
appellant claims that his trial counsel was ineffective by offering Aan arrest and conviction history of the appellant which exceeded
anything that was admissible against@ him.

 








Applicable Law

To succeed on an ineffective
assistance of counsel claim, an appellant must show not only that counsel=s performance was deficient, but also that the deficient performance
prejudiced the defense.  Strickland v.
Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Garza v.
State, 213 S.W.3d 338, 347 (Tex. Crim. App. 2007).  To demonstrate prejudice, the appellant must
show a reasonable probability that, but for counsel=s unprofessional errors, the result of the proceeding would have been
different.  Strickland, 466 U.S.
at 694, 104 S. Ct. at 2068; Garza, 213 S.W.3d at 348. 








Appellate review of counsel=s representation is highly deferential and presumes that counsel=s actions fell within the wide range of reasonable and professional
assistance.  Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002). 
Under normal circumstances, the record on appeal will not be sufficient
to show that counsel=s
representation was so deficient and so lacking in tactical or strategic
decision making as to overcome the presumption that counsel=s conduct was reasonable and professional.  Id. 
The trial record will rarely contain sufficient information to
permit a reviewing court to fairly evaluate the merits of such a serious
allegation.  Id.  Further, ineffective assistance of
counsel claims must be firmly founded in the record and affirmatively
demonstrate the alleged ineffectiveness. 
Id. at 834.  When the
record is silent as to possible trial strategies employed by defense counsel,
we will not speculate on the reasons for those strategies.  See Jackson v. State, 877 S.W.2d 768,
771 (Tex. Crim. App. 1994).

Analysis

Appellant contends that his
counsel was ineffective because he presented to the jury, during the
guilt/innocence phase, appellant=s arrest and conviction history, Awhich exceeded anything that was admissible.@

At trial, appellant=s counsel read a list of appellant=s numerous arrests and convictions that occurred between 2002 and
2006.  In addition, trial counsel asked
appellant the reasons for engaging in this criminal activity.  Appellant testified that he behaved in that
manner because he was using drugs, but he had been clean for eight or nine
months.  Additionally, during his closing
statement at the guilt/innocence phase of the trial, counsel argued,

I guess another reason that
the State=s going to
say that you shouldn=t believe
him is because he has all of those priors. 
But, I mean, fine, you could be suspicious of him, you can question him,
but he also might be telling the truth. 
Just because you have committed a crime doesn=t mean you=re suddenly
incapable of ever telling the truth.  I
mean, it=s kind of like the same thing that just because he committed a crime
in the past doesn=t mean that
he committed this crime.








Appellant argues that had
counsel not discussed his prior arrests and convictions, his lengthy criminal
record would not have been admissible to impeach him when he testified and that
the evidence of his priors only damaged his credibility with the jury; thus,
his trial counsel=s actions
fell below an objective standard of reasonable representation.

This case demonstrates the Ainadequacies inherent in evaluating ineffective assistance claims on
direct appeal.@  Patterson v. State, 46 S.W.3d 294, 306
(Tex. App.CFort Worth
2001, pet. ref=d.).  Appellant=s motion for new trial did not claim ineffective assistance of counsel,
and the trial court did not hold a hearing to determine whether his complaint
directed at trial counsel involved actions that may or may not have been
grounded in sound trial strategy.  It
appears that counsel may have had a strategic reason for mentioning the
offenses, perhaps in an attempt to mitigate the effect of appellant=s testimony regarding his purpose for driving the truck that day.  Consequently, we cannot determine whether
counsel=s actions were valid tactical trial decisions because the record does
not reflect counsel=s reasons
for introducing appellant=s arrest and
conviction history.  See Bone, 77
S.W.3d at 836; Patterson, 46 S.W.3d at 306.  Moreover, there was ample evidence of
appellant=s guilt;
thus we do not believe there is a reasonable probability that the outcome of
the trial would have been different but for any alleged error.  Strickland, 466 U.S. at 694, 104 S.
Ct. at 2068; Garza, 213 S.W.3d at 348. 
We overrule appellant=s fourth issue.








Conclusion

Having overruled appellant=s four issues, we affirm the trial court=s judgment.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL F:    LIVINGSTON, HOLMAN, and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  February 21, 2008

 











[1]See Tex. R. App. P. 47.4.