**Affirm and Opinion Filed April 29, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

### No. 05-19-00428-CR

### No. 05-19-00429-CR

### JOHN JAMES WILLIAMS, Williams
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause Nos. F-1835119-K and F-1835120-K**

## MEMORANDUM OPINION
Before Justices Molberg, Reichek, and Evans
Opinion by Justice Molberg

Following a bench trial, the trial court found appellant John James Williams guilty of aggravated assault and unlawful possession of a firearm by a felon, made an affirmative deadly weapon finding (a firearm), and sentenced him on each charge to five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. In two issues, Williams asserts the evidence is insufficient to support either judgment. We disagree and affirm both judgments.

**Background**

On October 18, 2018, around 8:45 a.m., Melody Bower was awakened in her home by a commotion involving fighting, yelling, and Williams saying he was going to shoot somebody. Bower lived in the home with Joseph Nolde and another female, who was an on-again, off-again girlfriend of Williams.

When she was awakened, Bower came out of her room and saw Williams arguing in the living room with a man named Josh Flowers. Williams had a black gun in his hand, pointed at Flowers, and was saying he was going to shoot somebody. Panicked and scared, Bower went to her room and called 911.

This was the second time that day that Williams brandished a gun in the house. Earlier that morning, around two o'clock, he kicked open the front door and went room-to-room with a gun, looking for a man nicknamed Spanky.[1] He did not lower the gun as he did so. Though she was scared, Bower did not call 911 during that event. Williams eventually calmed down, left the house, and returned again later.

When Bower called 911 around 8:45 a.m., she placed the phone beneath her pillow and left the call open so the 911 operator could hear what was happening. Williams went into Bower's room, asked her if she had called the police, and pointed the gun at her face, causing her to fear for her safety. Nolde was behind Bower on

---

[1] Williams had been with two others at a Wal-Mart in Lewisville before that. Williams told Bower he came in the house that way because he had received word that Spanky was there, holding people at gunpoint. Williams said he bought two 9 mm-styled BB guns at the Wal-Mart before heading to the house, in an effort to slow Spanky down long enough so he could grab him. Spanky was not there when Williams arrived.

the bed when Williams did this. Bower testified it was a real gun, and Nolde testified he believed the gun was real.[2]

When Williams realized Bower had called 911, Williams was angry, became more heated, and yelled more. He told Bower he was "about to light [her] place up." He left her room, ran about the house for "about two seconds" and "bolted out the door." Bower was "pretty sure" Williams took the gun with him.

Meanwhile, Aubrey Shepard, a patrol officer with the Irving Police Department, heard a radio call about a man with a gun waving it at people at the house. Because of his proximity to the scene, Officer Shepard went to the call. As he approached the house, he saw Williams enter a car on the passenger side and close the door. Officer Shepard quickly approached and ordered Williams to open the door and exit the vehicle. Williams complied.

Other officers arrived, and Officer Jason Banks searched the car and found a pistol under the front passenger seat where Williams had been. Officer Banks described it as a Glock subcompact pistol and said it had bullets in the chamber and

---

[2] Bower testified during her direct, cross-, and re-direct examinations that the gun pointed at her was a real gun. On cross-examination, she also agreed that a lot of BB guns look exactly like real guns if you are not examining them closely and did not dispute that Williams bought two BB guns. Bower testified on re-direct examination that when the gun was pointed at her, she did not stop and verify whether it was a working gun but believed it to be a real gun at that point. Nolde also testified that he saw Williams point the gun at Bower, and although he did not check to see if the gun was real, he also believed the gun to be real in that moment. On cross-examination, he testified that he never operated a gun and would not know if the gun was a real gun or a BB gun. While on the 911 call, Bower told the operator that the night before, Williams had a pistol and a BB gun in the house and that she did not know which gun he had with him at that moment.

the magazine. Officer Banks could not say whether the gun was the same one Williams waved in the house, but he testified that the weapon he found under the seat was a real gun with bullets in the magazine and in the chamber.

Williams told officers he used a BB gun.[3] Irving Police Detective Andy Ausen testified that Williams initially denied having a gun but later told him his "fingerprints would be on the gun" officers found in the car because he and another person had recently been target shooting.

In November 2018, Williams was charged by indictment with aggravated assault with a deadly weapon under Texas Penal Code section 22.02(a)(2) and unlawful possession of a firearm by a felon under Texas Penal Code section 46.04(a). *See* TEX. PENAL CODE §§ 22.02(a)(2), 46.04(a). When read together, the indictments alleged that on October 18, 2018, Williams:

> intentionally and knowingly threaten[ed] MELODY BOWER with imminent bodily injury, and . . . use[d] and exhibit[ed] a deadly weapon, to-wit: a FIREARM, during the commission of the assault [and]
>
> . . . intentionally and knowingly possess[ed] a firearm, to-wit: a HANDGUN, after [he] was duly and legally convicted on the 14TH day of JUNE, 2018, of the offense of ATTEMPTED OBSTRUCTION OR RETALIATION in the CRIMINAL DISTRICT COURT 4 of DALLAS County, Texas, in a case docketed as F1833000, and said court had jurisdiction over said prior offense, and said possession occurred before the fifth anniversary of [his] release from CONFINEMENT for [that] prior felony conviction.

---

[3] At trial, Williams maintained that police found an empty BB gun box in the trash can just outside the house, but no other witnesses testified to that, and no exhibits confirming that assertion were admitted. On cross-examination, Bower stated she does not question that the police department found two empty boxes where a BB gun had been purchased the day before.

—4—

Before trial commenced, the State filed a motion to amend the latter indictment, seeking to add a new paragraph, stating:

after said defendant was duly and legally convicted on the 14th day of June, 2018, of the offense of THEFT LESS THAN $2,500 WITH 2 PREVIOUS CONVICTIONS in the CRIMINAL DISTRICT COURT 4 of DALLAS County, Texas, in a case docketed as F1833752, and said court had jurisdiction over said prior offense.

The trial court granted the State's motion to amend the indictment. Williams waived his right to a jury trial, and the cases were tried to the court on March 14, 2019.

Seven witnesses testified at trial, including Bower, Nolde, Officer Shepard, Officer Banks, Detective Ausen, and Darren Hodge, an investigator with the Dallas County District Attorney's office.[4]

Williams also testified and denied pointing a gun at anyone. While he said he had a BB gun, he denied pointing it at others. He agreed he was frustrated when he went into the home and stated he had smoked meth that morning and had been drinking the night before. He also agreed he was in the vehicle where the gun was found and had ridden in the car before. He testified he could not recall whether he told Detective Ausen or others that his fingerprints would be on the gun found in the car because he and another person had been target shooting recently, but he did not deny doing so. Finally, Williams agreed that in 2018, he pled guilty to an attempted

---

[4] Hodge testified that the fingerprints on one of the State's exhibits were Williams's fingerprints and that the fingerprints on another exhibit were made by the same person.

retaliation charge and to a state jail felony of theft of less than $2,500 with two previous convictions. The court admitted a copy of the judgment from the latter conviction into evidence. That judgment was entered on June 14, 2018 and reflected Williams was sentenced to ninety days' confinement, a period that would have ended only approximately one month before the events at issue here.

After the parties rested and closed, the trial court found Williams guilty on both charges and assessed punishment on each charge at five years' confinement in the Institutional Division of the Texas Department of Criminal Justice, plus court costs. The trial court entered judgments to that effect in each case.[5]

Following entry of the court's judgments, Williams filed notices of appeal. He sought and obtained new counsel, and his counsel filed a motion for new trial, asserting that the verdict in each case was contrary to the law and evidence.[6] The record does not reflect that the trial court ruled on the motion within seventy-five days of its filing, and the motion was therefore deemed overruled. *See* TEX. R. APP. P. 21.8(c).

---

[5] Because the trial court did not enter an order purporting to cumulate the two punishments, Williams's sentences in the two cases run concurrently. *See Ex Parte Applewhite*, 729 S.W.2d 706, 708 (Tex. Crim. App. 1987) (en banc) (under article 42.08 of the Texas Code of Criminal Procedure, several punishments ordered in a number of causes on the same day run concurrently "unless the trial court, by order, expressly makes [those punishments] cumulative") (quoting *Ex Parte Crossnoe*, 232 S.W.2d 855, 855–56 (Tex. Crim. App. 1950)).

[6] The motion for new trial is in the clerk's record only in Cause No. F18-35120, but the motion contained both cause numbers in the case style, noted both convictions in the body of the motion, and stated, "The verdict in this case is contrary to the law and evidence."

## Standard of Review

In reviewing a challenge to the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We consider all of the evidence, whether or not properly admitted. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

The fact finder is the sole judge of the weight and credibility of the evidence and witness testimony. *See* TEX. CODE CRIM. PROC. art. 38.04; *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). We are "not to become a thirteenth juror" and thus "may not re-evaluate the weight and credibility of the record evidence and thereby substitute our judgment" for the fact finder's. *Isassi v. State*, 330 S.W.3d 633, 683 (Tex. Crim. App. 2010) (quoting *Dewberry*, 4 S.W.3d at 740)). Instead, we defer to the fact finder's responsibility "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson*, 443 U.S. at 318–19).

We consider "the cumulative force of all the incriminating evidence," and each fact "need not point directly and independently to the guilt of the appellant, as long as [that cumulative force] is sufficient to support the conviction." *Id*. at 13 (citing *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993)).

We presume the fact finder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326. We apply the same standard of review for direct and circumstantial evidence cases. *Hooper*, 214 S.W.3d at 13. Circumstantial evidence is as probative as direct evidence in establishing the defendant's guilt. *Id*.

**Analysis**

**1. Aggravated Assault**

In his first issue, Williams argues the evidence is insufficient to support his conviction of aggravated assault with a deadly weapon because there is no evidence he intentionally or knowingly threatened Bower with imminent bodily injury and because the State failed to show a link between Williams and the firearm retrieved at the scene.

Although not limited to these means, a person commits an aggravated assault if he intentionally or knowingly threatens another with imminent bodily injury and uses or exhibits a deadly weapon during the commission of the assault. TEX. PENAL CODE § 22.02(a)(2). "Deadly weapon" is defined by statute and includes a firearm, which is the specific type of deadly weapon mentioned in the indictment here. *See* TEX. PENAL CODE § 1.07(a)(17)(A).

Sections 6.03(a) and (b) of the Texas Penal Code define the circumstances in which a person acts "intentionally" and "knowingly."[7] In *Manrique v. State*, the Texas Court of Criminal Appeals stated, "Intent and knowledge are fact questions for the jury, and are almost always proven through evidence of the circumstances surrounding the crime." 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (en banc) (citing *Robles v. State*, 664 S.W.2d 91, 94 (Tex. Crim. App. 1984); *Mouton v. State*, 923 S.W.2d 219, 223 (Tex. App.—Houston [14th Dist.] 1996, no pet.)). Intent may be inferred from "any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of wounds inflicted on the victims." *Manrique*, 994 S.W.2d at 649 (citations omitted).

Based on the circumstances here, we conclude the evidence was sufficient to establish both of the elements Williams challenges. While Williams testified he originally went to the home to "protect" the occupants, Bower called 911 after observing Williams in her home with a black gun in his hand pointed at someone else and saying he was going to shoot somebody. Although there is no evidence that Bower suffered any physical injuries or that Williams actually planned to inflict

---

[7] A person "acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE § 6.03(a). A person "acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist" and "acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." *Id*. § 6.03(b).

bodily injury upon her, Bower testified that Williams went into her room, asked her if she had called the police, pointed the gun in her face when he did so, and caused her to fear for her own life. Bower testified it was a real gun, and Nolde, who was behind Bower on the bed when Williams did this, also testified he believed the gun was real. Although Williams denied this and claimed he had a BB gun but did not point it at anyone, that fact was disputed by Bower's and Nolde's testimony. The indictment here specified Williams used a firearm.[8]

When Williams realized Bower had called 911, Williams was angry, became more heated and yelled more, and told Bower he was "about to light [her] place up." He left her room, ran about the house for "about two seconds" and "bolted out the door." Bower was "pretty sure" Williams took the gun with him.

As Officer Shepard approached the house, he saw Williams enter a car on the passenger side and close the door. Officer Shepard quickly approached and ordered Williams to open the door and exit the vehicle. When Officer Banks searched the car, he found a loaded pistol under the front passenger seat where Williams had been. Detective Ausen testified Williams later told him that he had handled the gun found

---

[8] A BB gun is not a firearm and may or may not be a deadly weapon, depending on the circumstances. *See Adame v. State*, 69 S.W.3d 581, 586 (Tex. Crim. App. 2002) (while BB gun is not a firearm, indictment in that case stated a BB gun was used, and court concluded evidence was sufficient to support jury's deadly weapon finding in connection with use or exhibition of BB gun during robbery); *c.f. Moseley v. State*, 545 S.W.2d 144, 145–46 (Tex. Crim. App. 1976) (concluding that an unloaded BB gun that was never pointed toward the face of the victim and was never used as or threatened to be used as a bludgeon was not a deadly weapon in that case).

in the car and that his "fingerprints would be on it" because he and another person had recently been target shooting.

Based on these circumstances, we conclude a rational trier of fact could conclude beyond a reasonable doubt that Williams intentionally or knowingly threatened Bower with imminent bodily injury and that Williams used and exhibited a firearm when doing so. *See Jackson*, 443 U.S. at 319 (in deciding sufficiency of evidence to support conviction, court should determine whether rational trier of fact could conclude elements were established beyond a reasonable doubt); *In re D.A.K.*, 536 S.W.3d 845, 848 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (despite conflicting testimony, concluding evidence was sufficient to support aggravated assault conviction based on victim's testimony that juvenile defendant threatened to beat and kill her while within arm's reach); *Vega v. State*, No. 04-07-00890-CR, 2009 WL 1617670, at *1–2 (Tex. App.—San Antonio 2009, no pet.) (mem. op., not designated for publication) (despite conflicting testimony, jury could have concluded gun used during robbery was a firearm, not a BB gun as defendant claimed); *Lane v. State*, Nos. 05-03-00663-CR, 2004 WL 113098, at *3 (Tex. App.—Dallas 2004, pet. ref'd) (not designated for publication) (concluding a rational trier of fact could have found that the victims' fears of imminent bodily harm were reasonable and justified) (citing *Gaston v. State*, 672 S.W.2d 819, 821 (Tex. App.—Dallas 1983, no pet.)).

We overrule Williams's first issue.

–11–

## 2.    Possession of Firearm by Felon

In his second issue, Williams asserts the evidence is insufficient to support his conviction of unlawful possession of a firearm by a felon because, he argues, the State failed to prove that he used anything other than a BB gun and failed to establish he knew of the existence of and exercised actual care, custody, control, or management over the handgun found in the car.  This is similar to his deadly weapon argument made in connection with his first issue, which we overruled.

Under section 46.04(a) of the Texas Penal Code, a person who has been convicted of a felony commits an offense, in part, if he "possesses a firearm (1) after conviction and before the fifth anniversary of [his] release from confinement following conviction of the felony or [his] release from supervision under community supervision, parole, or mandatory supervision, whichever date is later." TEX. PENAL CODE § 46.04(a).

Williams's felony conviction in 2018 and the requisite timing under section 46.04(a) are both undisputed.  His only complaint regarding his section 46.04(a) conviction is that the evidence was insufficient to establish possession of a firearm. "Possession" means "actual care, custody, control, or management" and must be voluntary.  TEX. PENAL CODE §§ 1.07(a)(39), 6.01(a).  Possession is a voluntary act if "the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *Id*. § 6.01(b).

–12–

We analyze the sufficiency of the evidence regarding possession of a firearm by a felon under the rules adopted for determining the sufficiency of the evidence in cases of unlawful possession of a controlled substance. *See Bates v. State*, 155 S.W.3d 212, 213 (Tex. App.—Dallas 2004, no pet.) (citing *Young v. State*, 752 S.W.2d 137, 140 (Tex. App.—Dallas 1988, pet. ref'd)). Thus, the State was required to prove that (1) Williams "exercised control, management, or care of the firearm, (2) he was conscious of his connection to it, and (3) he possessed the firearm knowingly or intentionally." *See Hall v. State*, No. 05-18-00755-CR, 2019 WL 3773852, at *4 (Tex. App.—Dallas Aug. 12, 2019, no pet.) (mem. op., not designated for publication) (citing *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006)). In *Hall*, we explained that the evidence must affirmatively link the accused to the firearm when the firearm is not found on the accused's person or is not in the accused's exclusive possession. *Id.* (citing *Bates*, 155 S.W.3d at 216). Whether shown by direct or circumstantial evidence, the link must establish that the accused's connection to the firearm was "more than fortuitous." *Id.* (citing *Blackman v. State*, 350 S.W.3d 588, 594–95 (Tex. Crim. App. 2011)).

We explained in *Hall* that, while the accused's mere presence at the location where the firearm was found is insufficient, standing alone, to establish the necessary degree of control to support a conviction, the accused's presence or proximity, when combined with other evidence (often referred to as "links"), "may well be sufficient

–13–

to establish care, custody or control" of the firearm. *Id*. (citing *Evans*, 202 S.W.3d at 162). We listed the factors to be considered in this analysis, stating:

> Some factors that may establish a link to a weapon and/or contraband include the following: (1) whether the contraband or weapon was in plain view; (2) the accused's proximity to and the accessibility of the weapon or contraband; (3) whether the accused owned or controlled the place where the contraband or weapon was found; (4) whether the place where the drugs and weapon were found was enclosed; (5) whether the accused was found with a large amount of cash; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; and (8) whether the accused made furtive gestures.

*Id*. (citing *Tate v. State*, 500 S.W.3d 410, 414 (Tex. Crim. App. 2016)). We also explained "[t]here is no set formula to determine what links are sufficient" and that the number of links present is not as important as the "logical force" or degree to which the factors, alone or in combination, tend to link the accused to the firearm. *Id*. (citing *Porter v. State*, 873 S.W.2d 729, 732 (Tex. App.—Dallas 1994, pet. ref'd).

Finally, we made clear that the absence of certain links "does not constitute evidence of innocence to be weighed against the links present." *Id*. (citing *Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)). We noted that these rules are not a separate model for evidentiary sufficiency but were instead a model for applying the *Jackson* standard in the context of circumstantial evidence cases. *Id*. (citing *Villareal v. State*, No. 05-13-00629-CR, 2014 WL 3056509, at *4 (Tex. App.—Dallas July 7, 2014, no pet.) (not designated for publication)). Thus, as we do generally, we still defer to the fact finder's credibility and weight determinations and its ability to draw reasonable inferences

–14–

from basic facts to ultimate facts. *Id.* (citing *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010)).

In this case, the first, second, fourth, fifth, sixth and seventh factors link Williams to a firearm inside the house and in the vehicle. Bower and Nolde both saw Williams pointing a gun at Bower in her bedroom, and when Bower told Williams she had called the police, he was angry, became more heated and yelled more, and told Bower he was "about to light [her] place up." He left her room, ran about the house for "about two seconds" and "bolted out the door."

Officer Shepard, already near the scene, saw Williams enter the passenger side of the vehicle where the firearm was found and saw Williams close the door. Officer Shepard then quickly approached and ordered Williams to exit the car. Officer Banks found the firearm under the passenger seat on the same side Williams had been. Finally, Detective Ausen testified Williams told him he had "handled" the gun that was found in the car and that his "fingerprints would be on it," a fact that Williams did not deny.

Viewing the evidence in the light most favorable to the verdict, as we must, *see Jackson*, 443 U.S. at 319, we conclude there is sufficient evidence from which a rational trier of fact could conclude beyond a reasonable doubt that Williams' link to the firearm was not fortuitous and that he exercised control, management, or care of the firearm, was conscious of his connection to it, and possessed the firearm knowingly or intentionally.

–15–

Williams disagrees and cites *Swapsy v. State*, 562 S.W.3d 161, 165 (Tex. App.—Texarkana 2018, no pet.) and *Smith v. State*, 118 S.W.3d 838, 842 (Tex. App.—Texarkana 2003, no pet.) in arguing that the evidence here was insufficient. While those cases apply similar general principles to those we apply here, both in terms of application and case outcomes, neither case supports Williams's arguments.

In both *Swapsy* and *Smith*, the court concluded, as we do here, that the evidence established sufficient links between the accused and the firearm to allow a rational fact finder to conclude that the accused was unlawfully in possession of the firearm under section 46.04. Although certain distinctions exist between the three cases, they are not significant in our overall analysis, and the evidence of Williams's links to the firearm are even stronger in this case than the links that existed in *Swapsy* and *Smith*. *See Swapsy*, 562 S.W.3d at 167–68 (finding legally sufficient evidence existed to support section 46.04 conviction where there was conflicting evidence regarding accused's access to nightstand in which gun was kept and where there was no indication any witness had seen accused handle the gun); *Smith*, 118 S.W.3d at 842–44 (concluding legally and factually sufficient evidence existed to support section 46.04 conviction where accused was sole occupant in truck where gun was found and had attempted to flee, even though there was no indication accused had held or handled the gun).

Thus, we conclude the evidence here was sufficient to allow a rational trier of fact to find the necessary elements were established beyond a reasonable doubt and to convict Williams for unlawfully possessing a firearm under section 46.04(a)(1).

We overrule Williams's second issue.

## Conclusion

We affirm both of the trial court's judgments.

/Ken Molberg//
KEN MOLBERG
JUSTICE

190428f.u05
190429f.u05

Do Not Publish
TEX. R. APP. P. 47



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOHN JAMES WILLIAMS,
Appellant

No. 05-19-00428-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 4, Dallas County, Texas
Trial Court Cause No. F-1835119-K.
Opinion delivered by Justice
Molberg. Justices Reichek and Evans
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.


Judgment entered this 29th day of April, 2020.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOHN JAMES WILLIAMS,
Appellant

No. 05-19-00429-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District
Court No. 4, Dallas County, Texas
Trial Court Cause No. F-1835120-K.
Opinion delivered by Justice
Molberg. Justices Reichek and Evans
participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 29th day of April, 2020.