

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-24-00143-CR

JIMMY WAYNE SKINNER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th District Court
Upshur County, Texas
Trial Court No. 19886

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

An Upshur County jury found Appellant Jimmy Wayne Skinner guilty of unlawful possession of a firearm by a felon, a third-degree felony. *See* TEX. PENAL CODE ANN. § 46.04 (Supp.). After Skinner pled true to both enhancement paragraphs, the jury assessed a punishment of ninety-nine years' imprisonment. *See* TEX. PENAL CODE ANN. § 12.42(d). The trial court ordered that Skinner's sentence for this conviction would be served consecutively with a parole revocation that had not occurred. On appeal, Skinner argues that (1) the evidence was insufficient to establish that he knowingly possessed the firearm and (2) the trial court erred in running the parole revocation consecutively. Because the record is legally sufficient and the trial court erred in cumulating this conviction with a parole revocation that had not occurred, we affirm Skinner's conviction but modify the trial court's judgment by deleting the cumulation order.

## I.    Background

### A.    Guilt/Innocence Phase

The Upshur County Sheriff's Office (UCSO) had been investigating Cameron Spears for selling methamphetamine on his mother's property. Investigator Chris Lambert with the UCSO testified that several controlled buys were recorded at that location using confidential informants (CIs), and Skinner appeared in at least one of the recordings.

On February 2, 2024, officers executed a search warrant on several structures on that property. They also executed the search warrant on a metal building at the back of the property. Upon entry, Lambert first encountered Skinner, who was non-compliant with Lambert's orders

2

to lie down and be quiet.[1]  Skinner stated he was not "afraid to go to jail" and attempted to block the door with his foot to prevent officers from entering.  Lambert said, "I believe [the shotgun] was located -- you could see it kind of behind the couch or chair thing where they were sitting and sleeping on."

Investigator Michael Barton with the UCSO testified that the metal building had a big room and a smaller living quarters.  Upon searching the metal building, officers found a loaded shotgun next to a recliner that appeared to have been slept in, male clothing in the living quarters, drug paraphernalia near the couch/recliner, and a yellow straw, a credit card, and a Ziplock bag containing what appeared to be methamphetamine[2] on top of a mirror in front of the couch/recliner.  Also, the living quarters had a microwave with an opened beverage, a partially burned marihuana joint on top of it, and a Crown Royal bag containing marihuana, rolling papers, and syringes wedged between the arm and cushion of the seating.  Lambert testified, "Narcotics [are] always found with guns and money."

Investigator Rob Bowen with the UCSO testified that a small .22 rifle was also found in a rifle case that was behind the couch in the living quarters.  Investigator Shane Guthrie with the UCSO testified that he tested the shotgun, which functioned properly.

---

[1]Lambert testified,
> [Skinner] was refusing to follow the direct orders which were very simple, which was to lay down on his face and to be quiet so we could make entry into that room.  And he wanted to get down at his own pace, being very argumentative, telling us he ain't afraid to go to jail.  And then when we tried to open the door, he's sticking his foot in front of the door to keep us from opening it.

[2]Kathryn Orton, with the Texas Department of Public Safety Crime Laboratory in Tyler, Texas, testified that the substance tested positive for methamphetamine.  Orton's report admitted at trial shows it was 0.43 grams of methamphetamine.

The grand jury returned an indictment for unlawful possession of a firearm by a felon, charging that Skinner did

> then and there having been convicted of the felony offense of Driving While Intoxicated, 3rd or More, on the 11th day of June, 2012, in cause number 16,101, in the 115th District Court of Upshur County, Texas, intentionally, knowingly and recklessly possess a firearm before the fifth anniversary of the defendant's release from supervision under Parole following conviction of the felony.

*See* TEX. PENAL CODE ANN. § 46.04.

Cheyenne Morris testified that she supervised Skinner's parole. Morris testified that Skinner was convicted in cause number 16,101 in the 115th Judicial District Court in Upshur County for felony driving while intoxicated with habitual-offender enhancements. Skinner was sentenced to twenty-five years' imprisonment on June 11, 2012. He was released on February 28, 2020. His parole would have expired on October 29, 2036. Morris testified that Skinner was on parole on the offense date—February 2, 2024.

The jury found Skinner guilty of unlawful possession of a firearm by a felon.

**B.      Punishment Phase**

During the punishment phase, Morris testified that Skinner had a previous parole warrant and was arrested on that warrant on the same day as the offense at issue. Morris said that she believed that the parole board would revoke his parole. After Skinner pled true to both enhancements, the jury assessed a sentence of ninety-nine years' imprisonment. The trial court cumulated the sentence "to run consecutive to Cause No. 16101," which was the prior felony for which Skinner was on parole. Skinner appeals.

4

**II.**   **Legally Sufficient Evidence Supports the Jury's Findings of Guilt**

In his first point of error, Skinner argues only that the evidence was insufficient to establish that he was in possession of a firearm.

**A.**   **Standard of Review**

"The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence." *Braughton v. State*, 569 S.W.3d 592, 607 (Tex. Crim. App. 2018). "In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.)). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"In our review, we consider 'events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "It is not required

5

that each fact 'point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.'" *Id.* (quoting *Hooper*, 214 S.W.3d at 13). "Circumstantial evidence and direct evidence are equally probative in establishing the guilt of a defendant, and guilt can be established by circumstantial evidence alone." *Id.* (citing *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13). "Further, 'we must consider all of the evidence admitted at trial, even if that evidence was improperly admitted.'" *Id.* at 297–98 (quoting *Fowler v. State*, 517 S.W.3d 167, 176 (Tex. App.—Texarkana 2017), *rev'd in part by* 544 S.W.3d 844 (Tex. Crim. App. 2018)).

### B. Applicable Law

#### 1. Unlawful Possession of a Firearm by a Felon

The State must prove that (1) Skinner exercised actual care, custody, or control of the firearm, (2) he was conscious of his connection with it, (3) he possessed the firearm knowingly or intentionally, (4) he was previously convicted of a felony offense, and (5) he possessed a firearm after the conviction, but before the fifth anniversary of his release from confinement. *See* TEX. PENAL CODE ANN. § 46.04(a); *Hutchings v. State*, 333 S.W.3d 917, 920 (Tex. App.— Texarkana 2011, pet. ref'd). "Possession" is "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (Supp.). "A person commits an offense only if he voluntarily" possesses the prohibited item. TEX. PENAL CODE ANN. § 6.01(a). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX. PENAL

6

CODE ANN. § 6.01(b). "Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of [contraband]," "[p]resence or proximity to [contraband] . . . when combined with other direct or circumstantial evidence, may be sufficient to establish control, management, custody, or care provided the proof amounts to more than a strong suspicion." *Hutchison v. State*, 424 S.W.3d 164, 170 (Tex. App.—Texarkana 2014, no pet.) (citing *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006)).

### 2.      Affirmative Links

When, as here, the firearm was not found on the defendant's person or in his exclusive possession, the evidence may nevertheless be sufficient to support a conviction for unlawful possession if it affirmatively links the defendant to the firearm. *James v. State*, 264 S.W.3d 215, 218–19 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). "The State need not prove [that the defendant] had exclusive possession of the firearm"; rather, "joint possession is sufficient to sustain a conviction." *Swapsy v. State*, 562 S.W.3d 161, 167 (Tex. App.—Texarkana 2018, no pet.).

"The State may establish possession by proving an 'affirmative link,' which demonstrates that the defendant was conscious of his connection with the weapon and knew what it was." *James*, 264 S.W.3d at 219 (quoting *Hawkins v. State*, 89 S.W.3d 674, 677 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)). The evidence shows these links "may be direct or circumstantial," but the evidence must establish that the connection between the accused and the firearm is more than fortuitous. *Davis v. State*, 93 S.W.3d 664, 667 (Tex. App.—Texarkana 2002, pet. ref'd). Therefore, the mere presence of the accused at the location where a firearm is found is not

7

sufficient, in and of itself, to establish Skinner's knowing possession.  *See Evans v. State*, 202

S.W.3d 158, 162 (Tex. Crim. App. 2006).  This rule "protects the innocent bystander" (such as

"a relative, friend, or even stranger to the actual possessor") "from conviction merely [due to] his

fortuitous proximity to" a firearm belonging to someone else.  *See id.* at 161–62.  However, the

defendant's presence or proximity to the weapon and other evidence may be sufficient to

establish this element.  *Id.* at 162.

"When the contraband is not in the exclusive possession of the defendant, a fact finder

may nonetheless infer that the defendant intentionally or knowingly possessed the contraband if

there are sufficient independent facts and circumstances justifying such an inference."  *Tate v.

State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016).  Certain factors, either alone or in

combination, may be considered in deciding whether the evidence is legally sufficient to

circumstantially establish an accused's knowing possession of a firearm.  *See James*, 264 S.W.3d

at 219; *Nguyen v. State*, 54 S.W.3d 49, 53 (Tex. App.—Texarkana 2001, pet. ref'd), *overruled on

other grounds by Fagan v. State*, 362 S.W.3d 796 (Tex. App.—Texarkana 2012, pet. ref'd).

Factors that may establish affirmative links include:

> (1) the defendant's presence when a search is conducted; (2) whether the
> contraband was in plain view; (3) the defendant's proximity to and the
> accessibility of the narcotic; (4) whether the defendant was under the influence of
> narcotics when arrested; (5) whether the defendant possessed other contraband or
> narcotics when arrested; (6) whether the defendant made incriminating statements
> when arrested; (7) whether the defendant attempted to flee; (8) whether the
> defendant made furtive gestures; (9) whether there was an odor of contraband;
> (10) whether other contraband or drug paraphernalia were present; (11) whether
> the defendant owned or had the right to possess the place where the drugs were
> found; (12) whether the place where the drugs were found was enclosed;
> (13) whether the defendant was found with a large amount of cash; and
> (14) whether the conduct of the defendant indicated a consciousness of guilt.

8

*Evans*, 202 S.W.3d at 162 n.12 (quoting *Evans v. State*, 185 S.W.3d 30, 36 (Tex. App.—San Antonio 2005), *judgment rev'd by* 202 S.W.3d 158).

"The number of factors present is not as important as the logical force or the degree to which the factors, alone or in combination, tend to affirmatively link the accused to the [firearm]." *Bates v. State*, 155 S.W.3d 212, 217 (Tex. App.—Dallas 2004, no pet.). Additionally, the absence of some factors is not evidence of innocence that must be weighed against the factors that are present. *Harris v. State*, 532 S.W.3d 524, 529 (Tex. App.—San Antonio 2017, no pet.). "[E]vidence which affirmatively links him to it suffices for proof that he possessed it knowingly." *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). However, these "affirmative links" must demonstrate that "the accused was aware of the object, knew what it was, and recognized his or her connection to it." *Smith v. State*, 118 S.W.3d 838, 842 (Tex. App.—Texarkana 2003, no pet.) (citing *Gill v. State*, 57 S.W.3d 540, 544 (Tex. App.—Waco 2001, no pet.)). The logical force of the links, rather than the number of links, is dispositive. *See Evans*, 202 S.W.3d at 161–62. "Although these factors can help guide a court's analysis, ultimately the inquiry remains that set forth in *Jackson*: Based on the combined and cumulative force of the evidence and any reasonable inferences therefrom, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Tate*, 500 S.W.3d at 414 (citing *Jackson*, 443 U.S. at 318–19).

### C.    Analysis

Skinner does not challenge the sufficiency of the evidence to prove that he was previously convicted of a felony. Rather, Skinner maintains that the evidence was insufficient to

9

connect him to the firearm that was discovered during the search. Skinner's presence within the small[3] enclosed space with the firearm and drugs is a factor. *See Evans*, 202 S.W.3d at 162 ("[P]resence or proximity [to drugs], when combined with other evidence, either direct or circumstantial (e.g., 'links'), may well be sufficient to establish that element beyond a reasonable doubt."). The investigation began with an anonymous tip, followed by controlled buys where Skinner was present during at least one transaction. When the officers made entry for the search warrant, Skinner was one of two people in the metal building.[4,5] When the officers first saw Skinner, he was inside the living quarters, and the door was partially open. The search warrant was executed at 7:17 a.m. Skinner exited the living quarters fully dressed but without shoes on. The floor was dirty and was stained. The living area contained male clothing (Skinner was the only male present), a recliner with covers "[c]onsistent with somebody sleeping there," and food, open drinks, and a microwave, indicating someone had been living there. The television was not on. The jury could have inferred that Skinner slept in the living quarters the night before.

The shotgun was easily accessible from the recliner. "The chair up against the wall, the 20-gauge, the barrel was pointing up to where if you were sitting in the chair you could grab the barrel of the gun. It was between the wall and the chair." The sawed-off shotgun was fully loaded, easily accessible, in plain view, nearby, and maneuverable.

---

[3]Bowen guessed the living quarters might be "8 feet wide, 10 feet long."

[4]Spears, the person from whom the CI bought the drugs, was located in an RV on the property in a separate location when the officers arrived.

[5]Amanda Gage, who had a criminal history, exited the living quarters a short time after Skinner did. The State need not prove the accused "had exclusive possession of the firearm; joint possession is sufficient to sustain a conviction." *Greer v. State*, 436 S.W.3d 1, 5 (Tex. App.—Waco 2014, no pet.).

10

Throughout the living quarters, officers discovered various drugs and paraphernalia in plain view. The table in front of the recliner contained a yellow straw, credit card, and methamphetamine. Additional methamphetamine was found under the microwave. A Crown Royal bag on the recliner contained marihuana, rolling paper, and syringes. A methamphetamine pipe was found on the floor "between the sofa and the TV on the wall opposite." Lambert testified, "Narcotics [are] always found with guns and money." Skinner was previously present during a drug deal at that location where Spears was carrying a gun conspicuously. The shotgun's placement near the recliner, which was near the drugs on the coffee table, allowed the jury to infer the gun was used for protection of the conspicuous drugs.

Skinner's behavior during the search suggested consciousness of guilt. After exiting the living quarters, he immediately shut the door behind him. He was non-compliant with orders to get on the floor, stated he "ain't afraid to go to jail," and attempted to block the door with his foot to prevent officers from entering. The jury could have determined that behavior indicated consciousness of guilt (i.e., knowledge of the contraband inside the living quarters).

Each individual piece of evidence does not support an affirmative link to Skinner. However, we are barred from examining each individual piece of evidence in a "divide and conquer" fashion. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Hacker v. State*, 389 S.W.3d 860, 873 (Tex. Crim. App. 2013)). We must look at all the evidence in the record and determine whether the logical force shows that Skinner's proximity to the firearm was not merely fortuitous. *See Evans*, 202 S.W.3d at 162 ("It is . . . not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and

circumstantial."). Here, there are sufficient affirmative links to establish that Skinner had possession of the shotgun. The testimony and the physical evidence support Skinner's proximity and access to both the contraband and the shotgun. Skinner's incriminating statement and actions provide links to the contraband and to the shotgun. Considering the incriminating statements and actions, the logical force of these links, taken together, had a strong tendency to connect Skinner to the shotgun and establish that Skinner's connection with the shotgun was more than just fortuitous. Therefore, we overrule Skinner's first point of error.

## III. The Cumulation Order Was Invalid

In his second point of error, Skinner argues the trial court erred when it cumulated his sentence in this case with an undecided sentence that might be determined during his parole revocation hearing, which had not yet occurred.

### A. Standard of Review & Applicable Law

We review a trial court's cumulation order for abuse of discretion. *Byrd v. State*, 499 S.W.3d 443, 446 (Tex. Crim. App. 2016). "A trial court abuses its discretion if it imposes consecutive sentences where the law requires concurrent sentences." *Id*. at 446–47.

The Texas Code of Criminal Procedure states,

A judge sentencing a defendant convicted of an offense under Section 38.112, Penal Code, committed while on parole or mandatory supervision may order the sentence for the offense to:

(A)     run concurrently with the sentence for the offense for which the defendant was released on parole or to mandatory supervision; or

(B)     if the defendant's parole or mandatory supervision has been revoked, commence immediately on completion of the sentence for the offense for which the defendant was released on parole or to mandatory supervision.

12

TEX. CODE CRIM. PROC. ANN. art. 42.08(b-1)(1) (Supp.).

### B. Analysis

The State concedes that the record was legally insufficient to establish that Skinner's

parole had been revoked at the time he was sentenced on the conviction at issue. We agree.

In *Byrd*, the court held,

> [W]e hold that the timing of a defendant's parole revocation regarding the original offense affects whether a trial court has the ability to stack a second sentence on top of that original offense pursuant to Article 42.08(a) [of the Texas Code of Criminal Procedure]. In this case, because there was no evidence that appellant's parole had been revoked at the time he was sentenced on his second offense, the trial court's cumulation order was invalid.

*Byrd*, 499 S.W.3d at 445 (footnote omitted). "For the purposes of Article 42.08 and in relation to

the second offense, that defendant had 'made parole' on the first offense, and thus his first

sentence had already ceased to operate." *Id.* at 451. The court affirmed the judgment but

reformed the judgment to delete the cumulation order. *Id.*

We can modify the judgment "to make the record speak the truth." *French v. State*, 830

S.W.2d 607, 609 (Tex. Crim. App. 1992); *see* TEX. R. APP. P. 43.2(b). Here, at the time of

sentencing on the offense at issue, Skinner's parole had not been revoked. Therefore, the

cumulation order was invalid.

We sustain Skinner's second point of error.

13

## IV.     Conclusion

We modify the trial court's judgment by deleting the cumulation order.  As modified, we affirm the trial court's judgment.


                                                                Jeff Rambin
                                                                Justice

Date Submitted:     May 21, 2025
Date Decided:       August 1, 2025

Do Not Publish